**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **LED WAFER SOLUTIONS LLC,** | |
| *Plaintiff,* | |
| v. | Case No. _____ |
| **SAMSUNG ELECTRONICS CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG AUSTIN SEMICONDUCTOR, LLC, AND SEOUL SEMICONDUCTOR CO., LTD.,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

<u>**COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff LED Wafer Solutions LLC ("LED Wafer" or "Plaintiff"), hereby files this Complaint for Patent Infringement against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Austin Semiconductor, LLC, and Seoul Semiconductor Co., Ltd. (collectively, "Defendants" or "Samsung") and alleges, upon information and belief, as follows:

## THE PARTIES

1.      Plaintiff LED Wafer is a limited liability company organized and existing under the law of the State of Delaware, with its principal place of business located at 7215 Bosque Blvd., Suite 156, Waco, TX 76710.

2.      LED Wafer is the owner of the entire right, title, and interest of the Asserted Patents, as defined below.

3.      On information and belief, Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a Korean corporation with its principal place of business at 129 Samsung-Ro Yeongtong-gu, Gyeonggi-do 16677 Suwon-Shi, Republic of Korea. Samsung Electronics Co., Ltd. may be served pursuant to FED. R. CIV. P. 4(f)(1).

4.      On information and belief, Samsung Electronics does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement (the "Accused Products"), to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas. Samsung Electronics has received up to $6.4 billion in direct funding from the federal government to develop computer chip manufacturing in Texas[1] and increased their planned investment to $40 billion for Central Texas, yielding over 20,000 jobs.[2] Samsung Electronics used these funds to construct a plant to house

---

[1] https://www.cbsnews.com/texas/news/samsung-semiconductor-chip-factory-austin-taylor-texas/.
[2] https://www.americanprogress.org/article/new-samsung-semiconductor-plant-in-taylor-texas/.

Defendant Samsung Austin Semiconductor, LLC at 12100 Samsung Blvd, Suite 100, Austin, TX 78754-1902.[3]

5.      On information and belief, Defendant Samsung Electronics America, Inc. ("Samsung Electronics America") is a New York corporation with its principal place of business at 85 Challenger Rd., Ridgefield Park, New Jersey 97660. Samsung Electronics America has an office at 6625 Excellence Way, Plano, Texas, 75023, and may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

6.      On information and belief, Samsung Electronics America does business in Texas, directly or through intermediaries, and offers its products and/or services, including the Accused Products, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas. In June 2023, a Senior Manager for Samsung Electronics America announced that "Samsung today announced the opening of its new executive briefing center—the Samsung Networks Innovation Center—located at its Plano, TX, headquarters."[4] Additionally, on information and belief, Samsung Electronics America introduces products and services into the stream of commerce that incorporate infringing technology knowing that they would be sold in this District and elsewhere in the United States.

7.      On information and belief, Defendant Samsung Austin Semiconductor, LLC ("Samsung Austin"), is a Delaware corporation with its principal place of business at 12100 Samsung Blvd, Suite 100, Austin, Texas 78754-1902. Samsung Austin is registered to do business in the state of Texas and may be served with process through its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

---

[3] https://semiconductor.samsung.com/sas/company/taylor/.
[4] https://www.samsung.com/global/business/networks/insights/blog/0613-samsung-networks-innovation-center-opens-its-doors-offering-a-close-look-at-advanced-network-connectivity/.

8.     On information and belief, Defendant Seoul Semiconductor Co., Ltd. ("Seoul Semiconductor") is a Korean company with its principal place of business at 97-11, Sandan-ro 163beon-gil, Danwon-gu, Ansan-si, Gyeonggi-do, Republic of Korea.

9.     On information and belief, Seoul Semiconductor acts as a third-party LED supplier to Samsung for many of the Accused Products, including accused Samsung mobile phones. Based on Seoul Semiconductor's own pleadings in a prior litigation, Seoul Semiconductor contends it is a "true defendant to LED Wafer's claims as it manufactures LED components accused of infringement." *LED Wafer Solutions LLC v. Samsung Elecs. Co., Ltd*., 3:22-cv-04809-AMO, Dkt. 23 at 6 (N.D. Cal.) (the "California litigation"). Seoul Semiconductor has agreed to indemnify Samsung against certain claims of patent infringement asserted against Samsung's products. *Id.* at 7.

10.     Together, Defendants have authorized sellers and sales representatives offering and selling Accused Products throughout Texas, including this Judicial District. Such authorized sellers and sales representatives include, for example: Best Buy, 422 West TX-281 Loop, Suite 100, Longview, Texas 75605; AT&T Store, 1712 East Grand Avenue, Marshall, Texas 75670; TMobile, 1806 East End Boulevard North, Suite 100, Marshall, Texas 75670; Verizon authorized retailers, including Russell Cellular, 1111 East Grand Avenue, Marshall, Texas 75670; Victra, 1006 East End Boulevard N, Marshall, Texas 75670; and Cricket Wireless authorized retailer, 120 East End Boulevard South, Marshall, Texas 75670.

11.     Venue and jurisdiction over Defendants in this District have repeatedly been found proper, including by the Federal Circuit. *See, e.g.*, *In Re Samsung Elecs. Co., Ltd., Samsung Elecs. Am., Inc.*, 2025-129 (Fed. Cir. July 9, 2025) (non-precedential) (denying Samsung's motion to transfer to Northern District of California, finding that "[t]he district court plausibly found that EDTX—where SEA [(Samsung Electronics America)] maintains significant relevant operations

and where at least one of the accused products was tested—is home to potential witnesses and sources of proof.").

## NATURE OF THE ACTION

12.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin and obtain damages resulting from Defendants' unauthorized use, sale, and offer to sell in the United States, and importation into the United States, of products, methods, processes, services and/or systems that infringe Plaintiff's United States patents, as described herein.

13.    Defendants, individually and collectively as a single business entity or partnership, manufacture, provide, use, sell, offer for sale, import, and/or distribute infringing products and services, and encourage others to use their products and services in an infringing manner, as set forth herein.

14.    Plaintiff seeks past and future damages and prejudgment and post-judgment interest for Defendants' infringement of the Asserted Patents, as defined below.

## JURISDICTION AND VENUE

15.    This action arises under the patent laws of the United States, Title 35 of the United States Code, in particular, 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 1367.

16.    This Court has personal jurisdiction over Samsung Electronics in this action because Samsung Electronics has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Samsung Electronics would not offend traditional notions of fair play and substantial justice. Samsung Electronics, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of

COMPLAINT FOR PATENT INFRINGEMENT                                                  Page 4

infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the Asserted Patents. Moreover, Samsung Electronics actively directs its activities to customers located in the State of Texas.

17.    This Court has personal jurisdiction over Samsung Electronics America in this action because Samsung Electronics America has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Samsung Electronics America would not offend traditional notions of fair play and substantial justice. Samsung Electronics America, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the Asserted Patents. Moreover, Samsung Electronics America is registered to do business in the State of Texas, has offices and facilities in the State of Texas, and actively directs its activities to customers located in the State of Texas.

18.    This Court has personal jurisdiction over Samsung Austin in this action because Samsung Austin has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Samsung Austin would not offend traditional notions of fair play and substantial justice. Samsung Austin, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the Asserted Patents. Moreover, Samsung Austin is registered to do business in the State of Texas, has offices and facilities in the State of Texas, and actively directs its activities to customers located in the State of Texas.

19.    This Court has personal jurisdiction over Seoul Semiconductor in this action because Seoul Semiconductor has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Seoul Semiconductor would not offend traditional notions of fair play and substantial justice. Seoul Semiconductor directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the Asserted Patents. Moreover, Seoul Semiconductor actively directs its activities to customers located in the State of Texas.

20.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)–(d) and 1400(b) for all Defendants. Samsung Electronics is a foreign corporation not residing in the United States. Defendant Seoul Semiconductor is a foreign corporation not residing in the United States. Upon information and belief, Samsung Electronics has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas. Samsung Electronics America is registered to do business in the State of Texas, and upon information and belief, has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas. Samsung Electronics America maintains a regular and established place of business in the Eastern District of Texas. Samsung Austin is registered to do business in the State of Texas, and upon information and belief, has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas.

## LED WAFER'S PATENTED TECHNOLOGY

21.    Plaintiff alleges that Defendants have infringed and continue to infringe the following United States patents (collectively, the "Asserted Patents"):

- United States Patent No. 8,952,405, as modified by a reexamination certificate (the "'405 Patent") (Exhibits A and B); and

- United States Patent No. 9,786,822, as modified by a reexamination certificate (the "'822 Patent") (Exhibits C and D).

22.    Both Asserted Patents are entitled "LIGHT EMITTING DIODE PACKAGE AND METHOD OF MANUFACTURE" and list Mordehai Margalit as the first named inventor.

23.    The '405 Patent was filed on March 6, 2012 and issued on February 10, 2015. The '405 Patent claims priority to a provisional application filed on March 6, 2011. Samsung filed a request for *ex parte* reexamination of the '405 Patent, which was granted by the U.S. Patent and Trademark Office. *See* Reexamination Requests 90/015,155 and 90/015,156. After thorough review, the United States Patent and Trademark Office allowed new claims 18–22. *See* Ex Parte Reexamination Certificate for U.S. Patent No. 8,952,405, which is attached hereto as Exhibit B.

24.    The '822 Patent was filed on December 15, 2014, claims priority to an issued parent, Patent No. 8,941,137, which was filed on March 6, 2012 as U.S. Patent Application No. 14/570,449. The '822 Patent issued on October 10, 2017. Samsung filed a request for *ex parte* reexamination of the '822 Patent, which was granted by the U.S. Patent and Trademark Office. *See* Reexamination Request 90/015,130. After thorough review, the United States Patent and Trademark Office allowed amended claim 1 (with dependent claims 2–10) and new claims 11–20. *See* Ex Parte Reexamination Certificate for U.S. Patent No. 9,786,822, which is attached hereto as Exhibit D.

25.    In this case, Plaintiff asserts claims that were added or amended through these reexamination proceedings.

26.    Generally, the Asserted Patents are directed to a "light emitting diode (LED) device and packaging . . . manufactured using a vertical configuration including a plurality of layers."

'405 Patent, abstract; '822 Patent, abstract. LEDs provide significant advantages over alternative light sources such as increased energy efficiency, compact structure, durability, and may be more environmentally friendly to manufacture. '405 Patent, 1:32-44; '822 Patent, 1:33–45. Conventional LEDs, however, are bulkier, include more hazardous substances, and may be costly to manufacture. '405 Patent, 1:40–54; '822 Patent, 1:41–55. Moreover, conventional LEDs also require a carrier substrate that "greatly increases the thermal resistivity of the device and adversely affects its heat removal characteristics." '405 Patent, 1:60–64; '822 Patent, 1:64–66.

27.    The LED disclosed in the Asserted Patents has a plurality of layers, which "act to promote mechanical, electrical, thermal, or optical characteristics of the device." '405 Patent, 2:6–14; '822 Patent, 2:6–11 These layers may include "a semiconductor LED including doped and intrinsic regions thereof; a conducting carrier layer disposed proximal to a first surface of said semiconductor LED and separated therefrom by a metallic interface; an optically permissive layer proximal to a second surface of said semiconductor LED, said first and second surfaces of said semiconductor LED being on opposing faces thereof, an optically definable material proximal to or within said optically permissive layer that affects an optical characteristic of emitted light passing therethrough; and an optically permissive cover substrate covering at least a portion of the above components." '405 Patent, 2:15–27; *see also* '822 Patent, 2:18–30. Due to the design, the

COMPLAINT FOR PATENT INFRINGEMENT

LEDs disclosed in the Asserted Patents do not suffer from the same disadvantages as conventional LEDs. An illustration of an exemplary LED is shown below:



'405 Patent,                                                                                          Fig. 3.

## SAMSUNG'S INFRINGING DEVICES

28.      Samsung's mobile phones include a flash light emitting device ("LED") that serves as a flash for the camera on the mobile phone. This LED may also serve as a light source. The accused Samsung smartphones include LED chips that infringe the Asserted Patents. Infringing Samsung Galaxy S phones include the S25, S25+, S25 FE, S25 Ultra, S25 Edge; infringing Galaxy A phones include the A56 5G, A36 5G, A26 5G, A16 5G, and A35 5G; infringing Galaxy Z phones include the Z Fold7, Z Flip7, Z Flip7 FE, Z Fold6, and the Z Flip6 (collectively, the "Accused Products").

29.      Seoul Semiconductor supplies flash LEDs to Samsung that are incorporated into the Accused Products. On information and belief, these LEDs supplied by Seoul Semiconductor to Samsung provide infringing functionality or structure to the Accused Products.

## COUNT I: PATENT INFRINGEMENT OF THE '405 PATENT

30.    Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

31.    Plaintiff is the assignee and owner of all rights, title, and interest to the '405 Patent, including the right to recover for past infringements, and has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

32.    Samsung and Seoul Semiconductor filed petitions for *inter partes* review of the original '405 Patent. *See* IPR2021-01526 and IPR2021-01504, respectively. The Patent Trial and Appeal Board denied institution of Samsung's and Seoul Semiconductor's petitions for *inter partes* review. Samsung then filed a request for *ex parte* reexamination of the original '405 Patent pursuant to the lower threshold of substantial new question of patentability and broadest reasonable interpretation. *See* Reexamination Request Nos. 90/015,155 and 90/15,156. The USPTO granted the request. After consideration of hundreds of references, the USPTO allowed claims 1, 12, and 17 to issue with amendments, confirmed dependent claims 2–11 and 13–15, and allowed new claims 18–22 to issue.

33.    Defendants infringe at least claim 21 of the '405 Patent.

*Direct Infringement*

34.    Defendants, individually or collectively as a joint enterprise or partnership and without authorization or license from Plaintiff, have been and are directly infringing the '405 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using (including for testing purposes), importing, selling, and offering for sale products that infringe one or more claims of the '405 Patent. Defendants, individually or collectively as a joint enterprise or partnership, develop, design, manufacture, use, sell, import and distribute products that infringe one or more claims of the '405 Patent. In some instances, Seoul

COMPLAINT FOR PATENT INFRINGEMENT                                           Page 10

Semiconductor supplies flash LEDs to Samsung that are incorporated into one of the Accused Products and these flash LEDs provide infringing functionality or structure in that product. Defendants further provide services that practice methods that infringe one or more claims of the '405 Patent. Defendants are thus liable for direct infringement pursuant to 35 U.S.C. § 271.

35.     An exemplary infringing product is Samsung's Galaxy S25 phone, as named above in ¶ 28.

36.     On information and belief, the exemplary Accused Products infringe claims added during reexamination of the '405 Patent. Claim 21 of the '405 Patent for instance recites:

> [Claim 21:] A light emitting device, comprising:
> a semiconductor LED including a positively-doped region, an intrinsic region, and a negatively-doped region,
> wherein said intrinsic region is between said positively-doped region and said negatively-doped region, said semiconductor LED accommodating a first recess to expose a negatively-doped surface of said negatively-doped region;
> an electrically conducting metallization layer disposed on at least a portion of each of a positively-doped surface and said negatively-doped surface of said semiconductor LED,
> wherein said positively-doped surface is on an exposed portion of said positively-doped region of said semiconductor LED and said negatively-doped surface and said positively-doped surface are parallel with each other;
> a sapphire layer disposed on a first surface of said semiconductor LED, said positively-doped surface and said first surface of said semiconductor LED being parallel with one another and on opposing/aces of said semiconductor LED;
> an optically permissive layer in direct contact with said sapphire layer, said optically permissive layer comprising an optically definable material containing quantum dots and/or phosphor, said optically definable material adapted to change the frequency of at least some of emitted light passing therethrough;
> an optically permissive cover substrate covering and configured to provide structural presence and mechanical coupling to at least portion of the above components, wherein the optically permissive layer is positioned between the sapphire layer and the optically permissive cover substrate; and
> a passivation layer surrounding said metallization layer, said sapphire layer, and said semiconductor LED, wherein said passivation layer is reflective by incorporating material particles,
> wherein said passivation layer comprises a first contact hole for a first portion of an upper metal surface of said metallization layer disposed on said negatively-doped surface and said passivation layer surrounds a second portion of said upper metal surface of said metallization layer disposed on said negatively-doped surface,

wherein said passivation layer comprises a second contact hole for a first portion of a lower metal surface of said metallization layer disposed on said positively doped surface and said passivation layer surrounds a  second portion of said lower metal surface of said metallization layer disposed on said positively-doped surface, and

wherein said upper metal surface, said lower metal surface, said negatively-doped surface, said positively doped surface, and said surface of said optically permissive layer are parallel with one another.

37.    Defendants are liable for direct infringement pursuant to 35 U.S.C. § 271 for the manufacture, use, sale, offer for sale, importation, or distribution of the Accused Products.

38.    The Samsung Galaxy S25 mobile phone has a flash LED that is non-limiting example of an LED that meets all limitations of claim 21 of the '405 Patent, either literally or equivalently.

39.    The Samsung Galaxy S25 has a light emitting device (LED) that serves as a flash for the camera. This LED is annotated in a red box below[5]:



[5] https://www.samsung.com/us/smartphones/galaxy-s25/buy/galaxy-s25-256gb-unlocked-sku-sm-s931udbexaa/.

40.    A teardown image of the S25 LED is shown below, with the infringing LED annotated in red[6]:



41.    Samsung's Galaxy A-series devices (including, e.g., Galaxy A16, Galaxy A26, Galaxy A35, Galaxy A36, and Galaxy A56) feature similar LEDs as depicted and annotated in red below[7]:



42.    An exemplary teardown image of the A16 LED is shown below, with the infringing LED annotated in red[8]:

---

[6] https://valkyrie.cdn.ifixit.com/media/2025/02/10184900/S25U-Cameras.jpg.
[7] https://www.samsung.com/us/smartphones/galaxy-a-series/.
[8] https://vrm24.com/instructions/how-to-disassemble-samsung-galaxy-a15-sm-a155/.



43.    A diagram of Samsung's infringing LED technology is shown below:



Samsung LED Chip Diagram



**Source:** https://led.samsung.com/insights/insightsdetail-2/.

44.    Samsung's Galaxy S25 LED is a semiconductor LED including a positively-doped region, a negatively-doped region, and an intrinsic region between the positively-doped and negatively-doped regions. *See* Samsung Flip Chip Diagram (showing "P-Electrode" and "N-Electrode"). The semiconductor LED is a doped GaN LED. *See id.* On information and belief, the

COMPLAINT FOR PATENT INFRINGEMENT                                          Page 14

LED accommodates a first recess to expose a negatively doped surface of the negatively-doped region. *See id.*

45.    The S25 LED has an electrically conducting metallization layer disposed on at least a portion of each of a positively-doped surface and the negatively-doped surface, where the positively-doped surface is on an exposed portion of the positively-doped region of the semiconductor LED. *See id.* The electrically conducting metallization layer is in direct contact with exposed surfaces of portions of both the positively doped and negatively doped GaN. On information and belief, the negatively-doped surface and the positively-doped surface are parallel with each other. *See id.*

46.    The S25 LED further includes a sapphire layer disposed on a first surface of the semiconductor LED. *See id.* ("sapphire" layer). On information and belief, the first surface of the semiconductor LED is parallel to the positively-doped surface and on opposing faces of the semiconductor LED. *See id.*

47.    Additionally, the Samsung S25 LED includes an optically permissive layer in direct contact with the sapphire layer, where the optically permissive layer includes an optically definable material containing quantum dots and/or phosphor. *See id.* The optically definable material may specifically be phosphor, and the optically definable material changes the frequency of at least some of emitted light passing through the optically permissive layer.

48.    The S25 LED further includes an optically permissive cover substrate covering that is configured to provide structural presence and mechanical coupling to at least a portion of the components above. *See id.* Further, the optically permissive layer is positioned between the sapphire layer and the optically permissive cover substrate. *See id.*

49.    The Samsung Galaxy S25 LED also includes a passivation layer surrounding said metallization layer, the sapphire layer, and the semiconductor LED, where the passivation layer is

reflective by incorporating material particles. *See id.* Additionally, the passivation layer includes a first contact hole for a portion of an upper metal surface of the metallization layer disposed on the negatively-doped surface, and the passivation layer surrounds a second portion of the upper metal surface of the metallization layer disposed on the negatively-doped surface. *See id.*

50.    The passivation layer also includes a second contact hole for a first portion of a lower metal surface of the metallization layer disposed on the positively-doped surface and the passivation layer surrounds a second portion of the lower metal surface of the metallization layer disposed on the positively-doped surface. *See id.*

51.    The upper metal surface, the lower metal surface, the negatively-doped surface, the positively-doped surface, and the surface of the optically permissive layer are parallel with one another. *See id.*

*Willful Infringement*

52.    Upon information and belief, Defendants, individually and jointly, have had actual knowledge (or should have been aware) of the '405 Patent and Defendants' infringement thereof since at least the issuance of the reexamination certificate of the '405 Patent on August 28, 2024, which was issued in a reexamination initiated by Defendants.

53.    Since Samsung requested reexamination of the '405 Patent, it had actual knowledge of the Reexamination Certificate when it issued. Yet, Samsung did not and has not taken any steps to avoid infringement for the Accused Products upon issuance of the Reexamination Certificate. Instead, Samsung knowingly incorporated the technology disclosed in the '405 Patent into its products and did not take any remedial steps to avoid infringement upon issuance of the reexamined '405 Patent.

54.    Despite Samsung's actual knowledge of the reexamined '405 Patent upon its issuance, Samsung has continued to act recklessly and continues to willfully, wantonly, and

deliberately infringe the '405 Patent. Samsung's subsequent and continued intentional infringement of the reexamined '405 Patent in these circumstances constitutes egregious conduct.

55.    Similarly, since Seoul Semiconductor was involved in requesting reexamination of the '405 Patent, or at least received notifications of the progress of that reexamination in connection with litigation it was a part to, it had actual knowledge of the Reexamination Certificate when it issued on August 28, 2024. Yet, Seoul Semiconductor did not and has not taken any steps to design around or otherwise avoid infringing the '405 Patent upon the issuance of the Reexamination Certificate of the '405 Patent. Seoul Semiconductor knowingly incorporated the technology disclosed in the reexamined '405 Patent into its products and did not take any remedial steps to avoid infringement upon issuance Reexamination Certificate. Further, Seoul Semiconductor has continued to release new products containing the technology disclosed in and claimed by the reexamined '405 Patent.

56.    Facing the Patent Trial and Appeal Board's denial of Defendants' IPR petitions, Samsung filed requests for *ex parte* reexamination of the '405 Patent, hoping that the United States Patent and Trademark Office's lower threshold and lower evidentiary standards would bear fruit including, for example, a substantial new question of patentability rather than reasonable likelihood of invalidity, broadest reasonable interpretation, and no presumed validity. *See* Reexamination Requests 90/015,155 and 90/015,156. The United States Patent and Trademark Office granted Samsung's requests for *ex parte* reexamination of the '405 Patent. Over 200 references were cited during the reexamination and considered by the patent examiner. After thorough review, the United States Patent and Trademark Office allowed new claims 18-22. *See* Exhibit B.

57.    Because the United States Patent and Trademark Office confirmed in reexamination the patentability of the claims of the '405 Patent, including that claims previously

asserted by LED Wafer Solutions LLC in the California litigation were patentable amendments, and because the United States Patent and Trademark Office granted an additional five claims in the '405 Patent, Defendants cannot reasonably believe that they have a viable invalidity defense. Yet Defendants continue to make, use, sell, offer for sale, and import into the United States products that Defendants know infringe the '405 Patent, including but not limited to the Galaxy S25 mobile phones – without any authority or basis to do so, let alone a reasonable basis. Indeed, Samsung released at least the Galaxy S25 phone *after* issuance of the reexamination certificates for the asserted patents, after confirming the validity of the new claims in light of all of the prior art Samsung was able to identify, further underscoring that Samsung had full knowledge of these reissued patents, their applicability to Samsung's products, and the validity of those claims.[9] Further, to this day, Defendants continue to instruct their customers as to the use of the infringing LED flash on the Galaxy S25, thus knowingly inducing their customers to infringe the '405 Patent on a daily basis (as explained further below). Defendants' decision to persist in known, clearly-infringing conduct, despite the lack of any viable invalidity defense, is further evidence of "egregiousness."

58.     Although Defendants have incorporated Plaintiff's patented technology as set forth in this Complaint, Defendants have no license to use the technology as claimed and disclosed in the reexamined '405 Patent.

59.     Defendants' risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Defendants.

60.     Notwithstanding this knowledge, Defendants have knowingly or with reckless disregard willfully infringed the '405 Patent. Defendants have had actual notice of the reexamined

---

[9]     https://www.samsung.com/ca/mobile-buying-guide/introducing-galaxy-s25-series/    ("The Samsung Galaxy S25 series was announced on January 22nd, 2025 at Samsung's Unpacked Event. It became available for purchase on February 7th, 2025.").

'405 Patent and infringement thereof and acted despite an objectively high likelihood that their actions constituted infringement of Plaintiff's valid patent rights, either literally or equivalently.

61.    For at least the foregoing reasons, Defendants' conduct has been and continues to be willful and egregious, and Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

### Indirect, Induced Infringement

62.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein as to Defendants' knowledge of the '405 Patent.

63.    Defendants have induced and are knowingly inducing their distributors, testers, trainers, customers, and/or end-users to directly infringe the '405 Patent, with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

64.    Defendants' indirect infringement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce their customers and/or end-users to directly infringe the '405 Patent.

65.    Defendants' indirect infringement additionally includes marketing their products for import by their customers into the United States. Defendants' indirect infringement further includes providing product specifications instructing its customers on infringing uses of the accused products. The Accused Products are designed in such a way that when they are used for their intended purpose, the user infringes the '405 Patent, either literally or equivalently. Defendants know and intend that customers who purchase the Accused Products will use those products for their intended purpose. For example, Defendant's United States website, https://www.samsung.com, instructs customers to use the Accused Products in numerous

infringing applications. Defendants' customers directly infringe the '405 Patent when they follow Defendants' provided instructions, including by using and importing the structure claimed in the '405 Patent. Defendants specifically intend that their customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell infringing products in the United States to serve and develop the United States market for Defendants' infringing products.

66.    Defendant's website instructs customers and/or end-users to "use the flashlight on your Galaxy phone," such as the exemplary Accused Product, the Galaxy S25. *See* https://www.samsung.com/us/support/answer/ANS10003351/.



67.    Defendant's website instructs customers and/or end-users to use the "flashlight feature [that] uses the phone's camera LED as a bright light that can illuminate the area around you." *See* https://www.samsung.com/us/support/answer/ANS10003351/.

**Use the flashlight**                                              ∧

The flashlight feature uses the phone's camera LED as a bright light that can illuminate the area around you.
To use the flashlight, open the Quick settings panel by swiping down from the top right of the screen. Next, tap the **Flashlight** icon to turn the light on or off.



Depending on your setup, you may need to swipe left to see the Flashlight icon. You can also **rearrange** the button order or add icons to the panel based on your preference.
Your XCover6 Pro's flashlight can be activated instantaneously by pressing the **XCover** key or **Top** key. However, you must first **program the keys** in the Advanced features menu.

**Read less**

68.     Defendant's website instructs customers and/or end-users to adjust the brightness of the phone's camera LED when using it as a flashlight. *See* https://www.samsung.com/us/support/answer/ANS10003351/.





69.     Defendants know that third parties, including Defendants' customers, who follow its provided instructions directly infringe claims of the '405 Patent at least by using the structure claimed in the '405 Patent.

70.     Defendants thus actively induce the direct infringement of third parties, constituting infringement of claims of the '405 Patent by Defendants under 35 U.S.C. § 271(b).

71.     As a result of Defendants' infringement, Plaintiff has suffered monetary damages and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: PATENT INFRINGEMENT OF THE '822 PATENT

72.     Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

73.     Plaintiff is the assignee and owner of all rights, title, and interest to the '822 Patent, including the right to recover for past infringements, and has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

74.     Samsung filed a petition for *inter partes* review of the original '822 Patent. *See* IPR2021-01526. The Patent Trial and Appeal Board denied institution of Samsung's petition for *inter partes* review. Samsung then filed a request for *ex parte* reexamination of the original '822 Patent pursuant to the lower threshold of substantial new question of patentability and broadest reasonable interpretation. *See* Reexamination Request No. 90/015,130. The USPTO granted the request. After consideration of hundreds of references, the USPTO allowed claim 1 to issue with amendments, confirmed dependent claims 2–10, and allowed new claims 11–20 to issue.

75.     Defendants infringe at least claim 16 of the '822 Patent.

*Direct Infringement*

76.     Defendants, individually or collectively as a joint enterprise or partnership and without authorization or license from Plaintiff, have been and are directly infringing the '822 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using (including for testing purposes), importing, selling, and offering for sale devices that infringe one or more claims of the '822 Patent. Defendants, individually or collectively as a joint enterprise or partnership, develop, design, manufacture, sell, and distribute devices, including products that infringe one or more claims of the '822 Patent. In some instances, Seoul Semiconductor supplies flash LEDs to Samsung that are incorporated into one of the Accused Products and these flash LEDs provide infringing functionality or structure in that product. Defendants further provide services that practice methods that infringe one or more claims of the '822 Patent. Defendants are thus liable for direct infringement pursuant to 35 U.S.C. § 271.

77.     An exemplary infringing product is Samsung's S25 phone, as named above in ¶ 28.

COMPLAINT FOR PATENT INFRINGEMENT                                                                    Page 23

78.    On information and belief, the exemplary Accused Products infringe claims that were added during the recent reexamination of the '822 Patent. Claim 16 of the '822 Patent for instance recites:

> [Claim 16:] A light emitting device, comprising:
> an optically transparent cover substrate;
> an optically transparent layer covering an entire surface of said optically transparent cover substrate, said optically transparent layer including an optically definable material:
> a semiconductor LED including a positively-doped region, an intrinsic region, and a negatively-doped region, wherein said intrinsic region is between said positively-doped region and said negatively doped region, and a first side of said semiconductor LED contacts a first portion of a bottom surface of said optically transparent layer;
> a carrier layer proximal to a second side of said semi-conductor LED, said first and second sides on opposing sides of said semiconductor LED;
> a passivation layer disposed on said carrier layer and on said second side of said semiconductor LED, wherein said passivation layer surrounds said semiconductor LED and said carrier layer;
> a first electrical contact disposed on said carrier layer in a first contact hole defined in said passivation layer; and
> a second electrical contact disposed in a second contact hole defined in said passivation layer, said carrier layer, and said semiconductor LED, said second electrical contact in electrical communication with said first side of said semiconductor LED.

79.    Defendants are liable for direct infringement pursuant to 35 U.S.C. § 271 for the manufacture, sale, offer for sale, importation, or distribution of the Accused Products.

80.    The Samsung Galaxy S25 mobile phone has a flash LED that is non-limiting example of an LED that meets all limitations of claim 16 of the '822 Patent, either literally or equivalently.

81.    The Samsung Galaxy S25 has a light emitting device (LED) that serves as a flash for the camera. This LED is annotated in a red box below[10]:

---

[10] https://www.samsung.com/us/smartphones/galaxy-s25/buy/galaxy-s25-256gb-unlocked-sku-sm-s931udbexaa/.



82.    A teardown image of the S25 LED is shown below, with the infringing LED annotated in red[11]:



83.    A diagram of Samsung's flip chip technology is shown below. On information and belief, this infringing LED technology has been incorporated in Samsung's S25.

Samsung LED Chip Diagram



**Source:** https://led.samsung.com/insights/insightsdetail-2/.

---

[11] https://valkyrie.cdn.ifixit.com/media/2025/02/10184900/S25U-Cameras.jpg.

84.     Samsung's Galaxy S25 LED includes an optically transparent cover substrate and an optically transparent layer covering an entire surface of the optically transparent cover substrate. *See* Samsung LED Chip Diagram. The optically transparent layer includes an optically definable material.

85.     Samsung's Galaxy S25 LED is a semiconductor LED including a positively-doped region, a negatively-doped region, and an intrinsic region between the positively-doped and negatively-doped regions. *See id.* (showing "P-Electrode" and "N-Electrode"). The semiconductor LED is a doped GaN LED. *See id.* A first side of the semiconductor LED contacts a first portion of a bottom surface of the optically transparent layer. *See id.*

86.     The S25 LED has a carrier layer proximal to a second side of the semi-conductor LED. *See id.* The first and second sides are on opposing sides of the semiconductor LED. *See id.*

87.     The S25 LED further includes a passivation layer disposed on the carrier layer and on the second side of the semiconductor LED. *See id.* The passivation layer surrounds semiconductor LED and the carrier layer.

88.     Additionally, the S25 LED includes a first electrical contact disposed on the carrier layer in a first contact hole defined in the passivation layer. *See id.*

89.     The S25 LED further includes a second electrical contact disposed in a second contact hole defined in the passivation layer, the carrier layer, and the semiconductor LED, the second electrical contact in electrical communication with the first side of said semiconductor LED. *See id.*

*Willful Infringement*

90.     Upon information and belief, Defendants, individually and jointly, have had actual knowledge (or should have been aware) of the '822 Patent and Defendants' infringement thereof

since at least the issuance of the reexamination certificate of the '822 Patent on August 19, 2024, which was issued in a reexamination initiated by Defendants.

91.    Since Samsung requested reexamination of the '822 Patent, it had actual knowledge of the Reexamination Certificate when it was issued. Yet, Samsung did not and has not taken any steps to design around or otherwise avoid infringing the '822 Patent upon the issuance of the Reexamination Certificate. Instead, Samsung knowingly incorporated the technology disclosed in the '822 Patent into its products and did not take any remedial steps to avoid infringement upon issuance of the reexamined '822 Patent.

92.    Despite Samsung's actual knowledge of the reexamined '822 Patent upon its issuance, Samsung has continued to act recklessly and continues to willfully, wantonly, and deliberately infringe the '822 Patent. Samsung's continued intentional infringement of the reexamined '822 Patent in these circumstances constitutes egregious conduct.

93.    Similarly, since Seoul Semiconductor was involved in requesting reexamination of the '822 Patent, or at least received notifications of the progress of that reexamination in connection with litigation it was a part to, it also had actual knowledge of the Reexamination Certificate when it was issued on August 19, 2024. Yet Seoul Semiconductor did not and has not taken any steps to design around or otherwise avoid infringing the '822 Patent upon the issuance of the Reexamination Certificate. Seoul Semiconductor knowingly incorporated the technology disclosed in the reexamined '822 Patent into its products and did not take any remedial steps to avoid infringement upon issuance of the '822 Patent. Further, Seoul Semiconductor has continued to release new products containing the technology disclosed in and claimed by the '822 Patent.

94.    Facing the Patent Trial and Appeal Board's denial of Defendant's IPR petition on the original '822 Patent, Samsung filed a request for *ex parte* reexamination of the original '822 Patent, hoping that the United States Patent and Trademark Office's lower threshold and

evidentiary standards would bear fruit including, for example, a substantial new question of patentability rather than reasonable likelihood of invalidity, broadest reasonable interpretation, and no presumed validity. *See* Reexamination Request 90/015,130. The United States Patent and Trademark Office granted Samsung's requests for *ex parte* reexamination of the '822 Patent. Over 200 references were cited during the reexamination and considered by the patent examiner. After thorough review, the United States Patent and Trademark Office allowed new claims 11-20. *See* Exhibit D.

95.     Because the United States Patent and Trademark Office confirmed in reexamination the patentability of '822 claims, including that all of the claims previously asserted by LED Wafer Solutions LLC were patentable with amendments, and because the United States Patent and Trademark Office granted an additional ten claims in the '822 Patent, Defendants cannot reasonably believe that they have a viable invalidity defense. Yet Defendants continue to make, use, sell, offer for sale, and import into the United States products that Defendants know infringe the '822 Patent, including but not limited to the Galaxy S25 mobile phones – without any authority or basis to do so, let alone a reasonable basis. Indeed, Samsung released at least the Galaxy S25 phone ***after*** issuance of the reexamination certificates for the Asserted Patents, after confirming the validity of the new claims in light of all of the prior art Samsung was able to identify, further underscoring that Samsung had full knowledge of these reissued patents, their applicability to Samsung's products, and the validity of those claims.[12] Further, to this day, Defendants continue to instruct their customers as to the use of the infringing LED flash on the Galaxy S25, thus knowingly inducing their customers to infringe the '822 Patent on a daily basis

---

[12]    https://www.samsung.com/ca/mobile-buying-guide/introducing-galaxy-s25-series/    ("The Samsung Galaxy S25 series was announced on January 22nd, 2025 at Samsung's Unpacked Event. It became available for purchase on February 7th, 2025.").

(as explained further below). Defendants' decision to persist in known, clearly infringing conduct, despite the lack of any viable invalidity defense, is further evidence of "egregiousness."

96.    Although Defendants have incorporated Plaintiff's patented technology as set forth in this Complaint, Defendants have no license to use the technology as claimed and disclosed in the reexamined '822 Patent.

97.    Defendants' risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Defendants.

98.    Notwithstanding this knowledge, Defendants have knowingly or with reckless disregard willfully infringed the '822 Patent. Defendants have had actual notice of the '822 Patent and infringement thereof and acted despite an objectively high likelihood that their actions constituted infringement of Plaintiff's valid patent rights, either literally or equivalently.

99.    For at least the foregoing reasons, Defendants' conduct has been and continues to be willful and egregious, and Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

*Indirect, Induced Infringement*

100.    Plaintiff incorporates by reference the allegations in the preceding paragraphs as if full set forth herein as to Defendants' knowledge of the '822 Patent.

101.    Defendants have induced and are knowingly inducing their distributors, testers, trainers, customers, and/or end-users to directly infringe the '822 Patent, with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

102.    Defendants' indirect infringement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 29

other forms of support that induce their customers and/or end-users to directly infringe the '822 Patent.

103.    Defendants' indirect infringement additionally includes marketing their products for import by their customers into the United States. Defendants' indirect infringement further includes providing product specifications instructing its customers on infringing uses of the accused products. The Accused Products are designed in such a way that when they are used for their intended purpose, the user infringes the '822 Patent, either literally or equivalently. Defendants know and intend that customers who purchase the Accused Products will use those products for their intended purpose. For example, Defendants' United States website, https://www.samsung.com, instructs customers to use the Accused Products in numerous infringing applications. Defendants' customers directly infringe the '822 Patent when they follow Defendant's provided instructions, including by using and importing the structure claimed in the '405 Patent. Defendants specifically intend that their customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell infringing products in the United States to serve and develop the United States market for Defendants' infringing products.

104.    Defendant's website instructs customers and/or end-users to "use the flashlight on your Galaxy phone," such as the exemplary Accused Product, the Galaxy S25. *See* https://www.samsung.com/us/support/answer/ANS10003351/.



105.    Defendant's website instructs customers and/or end-users to use the "flashlight feature [that] uses the phone's camera LED as a bright light that can illuminate the area around you." *See* https://www.samsung.com/us/support/answer/ANS10003351/.



106.    Defendant's website instructs customers and/or end-users to adjust the brightness of the phone's camera LED when using it as a flashlight. *See* https://www.samsung.com/us/support/answer/ANS10003351/.



107.     Defendants know that third parties, including Defendants' customers, who follow its provided instructions directly infringe claims of the '822 Patent at least by using the structure claimed in the '822 Patent.

108.     Defendants thus actively induce the direct infringement of third parties, constituting infringement of claims of the '822 patent by Defendants under 35 U.S.C. § 271(b).

109.     As a result of Defendants' infringement, Plaintiff has suffered monetary damages and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## NOTICE

110.     LED Wafer has complied with the notice requirement of 35 U.S.C. § 287. This notice requirement has been complied with by all relevant persons at all relevant times.

COMPLAINT FOR PATENT INFRINGEMENT                                      Page 32

## JURY DEMAND

111.    Plaintiff demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## PRAYER FOR RELIEF

112.    WHEREFORE, Plaintiff prays for judgment and seeks relief against Defendants as follows:

A.  That the Court determine that one or more claims of the Asserted Patents is infringed by Defendants, both literally and under the doctrine of equivalents;

B.  That the Court determine that one or more claims of the Asserted Patents is indirectly infringed by Defendants;

C.  That the Court award damages adequate to compensate Plaintiff for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs, and an ongoing royalty for continued infringement;

D.  That the Court permanently enjoin Defendants pursuant to 35 U.S.C. § 283;

E.  That the Court find this case to be exceptional pursuant to 35 U.S.C. § 285;

F.  That the Court determine that Defendants' infringements were willful;

G.  That the Court award enhanced damages against Defendants pursuant to 35 U.S.C. § 284;

H.  That the Court award reasonable attorneys' fees; and

I.  That the Court award such other relief to Plaintiff as the Court deems just and proper.

COMPLAINT FOR PATENT INFRINGEMENT

Dated: September 15, 2025

Respectfully Submitted,

/s/ Ryan D. Dykal

Ryan D. Dykal (MO State Bar No. 60905)

Jordan T. Bergsten (*pro hac vice* forthcoming)
Mark D. Schafer (*pro hac vice* forthcoming)
Eric Maurer (*pro hac vice* forthcoming)
Anita Liu (TX State Bar No. 24134054)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
(t) 202-274-1109
rdykal@bsfllp.com
jbergsten@bsfllp.com
mschafer@bsfllp.com
emaurer@bsfllp.com
aliu@bsfllp.com

*Counsel for Plaintiff LED Wafer Solutions LLC*