# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| **LED WAFER SOLUTIONS, LLC,** |  |
| *Plaintiff*, |  |
| v. | Case No. 2:25-cv-000948-JRG |
| **SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG AUSTIN SEMICONDUCTOR, LLC, AND SEOUL SEMICONDUCTOR CO., LTD.** | **JURY TRIAL DEMANDED** |
| *Defendants.* |  |

**PLAINTIFF LED WAFER'S OPPOSITION TO
SEOUL SEMICONDUCTOR CO., LTD.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED .............................................................2

III.   FACTUAL BACKGROUND ...........................................................................................2

IV.   LEGAL STANDARD.......................................................................................................6

     A.     Proper Service ......................................................................................................6

     B.     Personal Jurisdiction ...........................................................................................6

     C.     First-to-File .........................................................................................................7

     D.     Failure to State a Claim .......................................................................................7

            5.     Direct Infringement ...............................................................................8

            6.     Induced Infringement ...........................................................................8

            7.     Willful Infringement .............................................................................8

V.     ARGUMENT....................................................................................................................9

     A.     LED Wafer's Service on SSC Was Proper. .........................................................9

            1.     The Hague Convention Does Not Apply to Service on a Foreign Defendant Within the United States. ....................................................9

            2.     Mr. Park's Admissions Make the Prima Facie Case that He is an Officer of SSC, and LED Wafer's Disputed Contrary Evidence is Irrelevant. .................10

            3.     In the Alternative, Under New Jersey Law, Service on SSI Effected Service on SSC Because SSI Functions as SSC's Alter-Ego. ...........................................11

            4.     Alternatively, Substitute Service Under Rule 4(f)(3) Should be Permitted......14

     B.     This Court has Personal Jurisdiction over SSC. .........................................................15

     C.     This Case Was First Filed in this District, and it is Not Proper to Dismiss Based on Another Case Involving Different Patents, Products, and Parties. ...............................17

     D.     The Complaint Plausibly Pleads Causes of Action for Infringement. .........................24

i

1.    LED Wafer Has Pled Direct Infringement..........................................................24

2.    LED Wafer Has Adequately Pled Induced Infringement. ...............................25

　　a.    LED Wafer Sufficiently Alleges how SSC induced Its Customer, Samsung, to Infringe the Asserted Patents. ...........................................26

　　b.    SSC specifically intended for Samsung to infringe the Asserted Patents. ...............................................................................................................26

　　c.    SSC knew that Samsung infringed the Asserted Patents. ....................27

3.    LED Wafer Has Pled Willful Infringement. ....................................................28

VI.    CONCLUSION ...........................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adaptive Spectrum & Signal Alignment, Inc. v. Charter Commc'ns, Inc.*, No. 2:24-CV-00124-
JRG-RSP
2025 WL 1341892 (E.D. Tex. Mar. 31, 2025) ...................................................................9

*Adobe Sys. Inc. v. Wowza Media Sys., LLC*
72 F. Supp. 3d 989 (N.D. Cal. 2014) ..............................................................................21

*Advanced Integrated Cir. Process LLC v. United Microelectronics Corp.*, No. 2:24-CV-623-
JRG
2025 WL 2784244 (E.D. Tex. Sept. 30, 2025) ...........................................................7, 10

*Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13-CV-369
2014 WL 11342502 (W.D. Tex. July 2, 2014) ...........................................................14, 15

*AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-CV-00514-JRG
2018 WL 4680557 (E.D. Tex. Sept. 28, 2018) ................................................................16

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*
697 F. Supp. 3d 635 (E.D. Tex. 2023) ......................................................................6, 8, 10

*Asahi Metal Indus. Co. v. Superior Court*
480 U.S. 102 (1987) ........................................................................................................16

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ..........................................................................................................8

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*
672 F.3d 1335 (Fed. Cir. 2012) .......................................................................................19

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .....................................................................................................8, 24

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*
21 F.3d 1558 (Fed. Cir. 1994) .........................................................................................16

*Bowlby v. City of Aberdeen, Miss.*
681 F.3d 215 (5th Cir. 2012) ...........................................................................................29

*Cadle Co. v. Whataburger of Alice, Inc.*
174 F.3d 599 (5th Cir. 1999) .............................................................................................7

*Campbell Pet Co. v. Miale*

542 F.3d 879 (Fed. Cir. 2008) ........................................................................................16

*Carimi v. Royal Carribean Cruise Line, Inc.*
959 F.2d 1344 (5th Cir. 1992) ........................................................................................6

*Cat5 Res., LLC v. CB Towers, LLC*, No. 1:19-CV-87, 2019 WL 13149916 (E.D. Tex. May 22,
2019) ...............................................................................................................................6

*Commil USA, LLC v. Cisco Sys., Inc.*
575 U.S. 632 (2015) ......................................................................................................26

*Commil USA, LLC v. Cisco Sys., Inc.*
720 F.3d 1361 (Fed. Cir. 2013) ....................................................................................26

*Dewey v. Volkswagen AG*
558 F. Supp. 2d 505 (D.N.J. 2008) ...............................................................................12

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*
888 F.3d 1256 (Fed. Cir. 2018) ......................................................................................8

*Document Generation Corp. v. Allscripts, LLC*, No. 6:08-CV-479
2009 WL 10677279 (E.D. Tex. May 19, 2009) .............................................................21

*Document Security Sys., Inc. v. Seoul Semiconductor Co., Ltd.*
2:17-cv-308, Dkt. 11 (E.D. Tex. Apr. 28, 2017) ...........................................................12

*Estech Sys. IP, LLC v. Mitel Networks, Inc.*, No. 2:21-CV-0473-JRG-RSP
2022 WL 16641746 (E.D. Tex. Sept. 23, 2022) ............................................................29

*Finjan, Inc. v. Sophos, Inc.*
2015 WL 7075573 (N.D. Cal. Nov. 13, 2015) ...............................................................28

*Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-CV-01827-N
2018 WL 3330022 (N.D. Tex. Mar. 16, 2018) ..............................................................15

*Global-Tech Appliances, Inc. v. SEB S.A.*
563 U.S. 754 (2011) ........................................................................................................8

*Hunt-Collin Elec. Co-op, Inc. v. Rayburn Country Elec. Co-op, Inc.*, No. CIV. A. S-87-211-
CA,
1988 WL 428654 (E.D. Tex. Feb. 5, 1988) .....................................................................7

*In re Bill of Lading Transmission and Processing System Patent Litigation*
681 F.3d 1323 (Fed. Cir. 2012) ...............................................................................8, 24

*In re Echostar Corp*
388 F. App'x 994 (Fed. Cir. 2010) ................................................................................21

*In re Samsung Elecs. Co., Ltd., Samsung Elecs. Am., Inc.*

No. 25-cv-00129 (Fed. Cir. July 9, 2025) ................................................................................23

*Info-Hold, Inc. v. Muzak LLC*
    783 F.3d 1365 (Fed. Cir. 2015) ......................................................................................26

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*
    665 F.3d 671 (5th Cir. 2011) ............................................................................................7

*Jackson v. Gehl Co.*, No. CIV.A. 2-09-CV-00048
    2009 WL 3448135 (E.D. Tex. Oct. 22, 2009) ................................................................17

*Karl Storz Endoscopy-Am. Inc. v. Integrated Med. Sys. Int'l, Inc.*
    400 F. Supp. 3d 1248 (N.D. Ala. 2019) ........................................................................29

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*
    342 U.S. 180 (1952) ..........................................................................................................7

*Lisson v. ING GROEP N.V.*
    262 F. App'x 567 (5th Cir. 2007) ..............................................................................11, 13

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*
    594 F.3d 383 (5th Cir. 2010) ............................................................................................3

*Lormand v. US Unwired, Inc.*
    565 F.3d 228 (5th Cir. 2009) ............................................................................................7

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) ......................................6

*Maxell, Ltd. v. Coretronic Corp.*, No. 5:24-CV-00088-RWS-JBB
    2025 WL 1675347 (E.D. Tex. May 16, 2025)................................................................25

*McCuin v. Texas Power & Light Co.*
    714 F.2d 1255 (5th Cir. 1983) ........................................................................................22

*Metro Equip. & Rental Co. v. Tsurumi Mfg. Co.*, No. PE:21-CV-30-DC-DF
    2021 WL 7500608 (W.D. Tex. Sept. 10, 2021)..............................................................14

*Mohamed v. Mazda Motor Corp.*
    90 F. Supp. 2d 757 (E.D. Tex. 2000)..............................................................................22

*Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*, No. 2:22-CV-00494-JRG-RSP
    2024 WL 1340360 (E.D. Tex. Mar. 1, 2024) ................................................................30

*n re Samsung Elecs. Co., Ltd., Samsung Elecs. Am., Inc.*, No. 25-cv-00129 (Fed. Cir. July 9,
    2025) ...............................................................................................................................16

*Nagravision SA v. Gotech Int'l Tech. Ltd.*
    882 F.3d 494 (5th Cir. 2018) ....................................................................................6, 14

*Nalco Co. v. Chem-Mod, LLC*
   883 F.3d 1337 (Fed. Cir. 2018) ...................................................................27

*Nat. Cheng Kung Univ. v. Seoul Semiconductor Co., Ltd.*
   2:13-cv-00465-JRG-RSP, Dkt. 19 (E.D. Tex. Dec. 18, 2013) .........................12

*Netflix, Inc. v. Broadcom Inc.*
   793 F. Supp. 3d 1168 (N.D. Cal. 2025) .........................................................18

*Pantech Corp. v. OnePlus Tech. (Shenzhen) Co*., No. 5:24-CV-00038-RWS-JBB
   2025 WL 2793801 (E.D. Tex. Aug. 27, 2025) ...............................................29

*Polara Eng'g Inc v. Campbell Co.*
   894 F.3d 1339 (Fed. Cir. 2018) ...................................................................28

*Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*
   9 F.3d 415 (5th Cir.1993) ...........................................................................16

*Save Power Ltd. v. Syntek Fin. Co*rp.
   121 F.3d 947 (5th Cir. 1997) .........................................................................7

*Seoul Semiconductor Co., Ltd. v. Fry's Elecs., Inc.*, 18-cv-386 (E.D. Tex. 2018).............................16

*Seoul Semiconductor Co., Ltd. v. Nichia Corp.*, 9:07-cv-273 (E.D. Tex. 2007) ................................16

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No. 2:20-CV-00003-JRG
   2020 WL 6578411 (E.D. Tex. June 15, 2020)...........................................14, 15

*Soverain IP, LLC v. Microsoft Corp.*, No. 217CV00204RWSRSP
   2018 WL 1465792 (E.D. Tex. Mar. 26, 2018) .................................................8

*St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. CIVA 04-1436-
   JJF-LPS
   2009 WL 2340650 (D. Del. July 28, 2009) ...................................................29

*Target Training Int'l, Ltd. v. Extended Disc N. Am., Inc.*
   645 F. App'x 1018 (Fed. Cir. 2016) .................................................2, 18, 22

*Tex. Instruments Inc. v. Micron Semiconductor, Inc.*
   815 F. Supp. 994 (E.D. Tex. 1993).................................................................7

*Touchstream Techs., Inc. v. Altice USA, Inc*., No. 2:23-CV-00059-JRG
   2024 WL 1117930 (E.D. Tex. Mar. 14, 2024) ...............................................30

*Touchstream Techs., Inc. v. Charter Commnc'ns, Inc*., 2:23-cv-00059-JRG-RSP (E.D. Tex.
   Mar. 2023) ................................................................................................30

*Uniloc USA, Inc. v. Motorola Mobility LLC*, No. 2:16-CV-989-JRG
   2017 WL 3721064 (E.D. Tex. May 15, 2017)...........................................26, 27

*Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-CV-00449-JRG
  2024 WL 4519760 (E.D. Tex. Oct. 17, 2024) ............................................................6, 16

*Volkswagenwerk Aktiengesellschaft v. Schlunk*
  486 U.S. 694, 704 (1988) ............................................................................................9, 11

*Way v. City of Missouri City*
  133 F.4th 509 (5th Cir. 2025) .........................................................................................11

*WBIP, LLC v. Kohler Co.*
  829 F.3d 1317 (Fed. Cir. 2016) ...................................................................................8, 29

**Rules**

FED. R. CIV. P. 12(b)(7) ........................................................................................................6

FED. R. CIV. P. 4 ..................................................................................................................6

FED. R. CIV. P. 4(e)(1) ....................................................................................................6, 11

FED. R. CIV. P. 4(f) ..............................................................................................................9

FED. R. CIV. P. 4(f)(3) ..........................................................................................................6

FED. R. CIV. P. 4(h)(1) ........................................................................................................11

Rule 12(b)(7) ........................................................................................................................6

## I.    INTRODUCTION

Defendant SSC's Motion to Dismiss is riddled with red herrings and inapplicable statements of law. It even mischaracterizes its own prior positions in an attempt to prevent LED Wafer from having its day in court. Respectfully, the Court should reject this attempt.

*First,* SSC objects to LED Wafer's service in the United States on SSC's officer, Kevin Park. But LED Wafer easily makes a prima facie case of proper service. SSC's primary argument is that Mr. Park is not a true officer of SSC, but it cannot dispute that Mr. Park holds himself out publicly as such—creating and maintaining a LinkedIn profile identifying himself as SSC's vice president. Further, LED Wafer's process server submitted a sworn statement that Mr. Park identified himself as an officer of SSC (before throwing process papers at the server and stating that SSC should be served in Korea). SSC's disputed evidence to the contrary cannot overcome this showing. And in any event, this case meets the requirements previously applied by this Court for permitting alternative service on domestic counsel given that SSC clearly has notice of the action. The Complaint cannot be dismissed where such material disputes of facts exist.

*Second,* SSC alleges that this Court lacks jurisdiction because SSC is a foreign corporation with no ties to this forum. This is incorrect. SSC knows that Samsung is its customer, knows that Samsung operates in this District and throughout this State, and should reasonably foresee that it may be haled into court here. SSC has even filed its own patent infringement suits in this District. SSC is justly subject to personal jurisdiction in this Court.

*Third,* as yet another alternative argument, SSC asserts that this entire case should be dismissed under the first-to-file rule. But this is the first case filed on any of the issues presented. SSC points to a case in the Northern District of California, but that case involves different patents, products, and parties. During that prior case, SSC filed reexamination proceedings against LED

Wafer patents and knew (or should have known) that: (1) those proceedings could result in new claims; (2) LED Wafer would be "free to commence a new litigation asserting infringement of the newly added claims;" and (3) (as in any case) LED Wafer would be free to do so in its chosen forum. *See Target Training Int'l, Ltd. v. Extended Disc N. Am., Inc.*, 645 F. App'x 1018, 1020, 1025 (Fed. Cir. 2016). That is exactly what happened here. The patent claims asserted in this case are new and only exist due to the reexaminations, and they have never been pled in the N.D.C.A. action. It is ironic that SSC repeatedly accuses LED Wafer of "a blatant display of forum shopping" (Mot. at 13) when it is SSC that seeks to turn the first-to-file rule on its head to improperly force LED Wafer to litigate this new lawsuit in SSC's favored forum.

**Fourth,** SSC contends that the Complaint fails to adequately plead direct and induced infringement, as well as willfulness. It argues a heightened pleadings standard that courts have already rejected. At this stage, LED Wafer only needs to plead plausibility and it has done so.

SSC's Motion to Dismiss should thus be denied in its entirety.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1. Whether LED Wafer properly served SSC in serving its purported officer;

2. Whether this Court has personal jurisdiction over SSC;

3. Whether the first-to-file rule should apply; and

4. Whether LED Wafer sufficiently pled direct, induced, and willful infringement.

## III.    FACTUAL BACKGROUND

Plaintiff LED Wafer ("LED Wafer" or "Plaintiff") commenced a patent infringement action on March 25, 2021 against Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (together, with Defendant Samsung Austin Semiconductor accused in this Case, the "Samsung Defendants" or "Samsung") in the Western District of Texas ("WDTX"), alleging four

counts of patent infringement relating to four patents: U.S. Patent No. 8,941,137 (the "'137 patent"), U.S. Patent No. 8,952,405 (the "'405 patent"), U.S. Patent No. 9,502,612 (the "'612 patent"),[1] and U.S. Patent No. 9,786,822 (the "'822 patent"), and accusing various Samsung TV models, phones, and tablets. *See generally LED Wafer Solutions LLC v. Samsung Elecs. Co., Ltd.*, 3:22-cv-04809 (N.D. Cal. 2021) (hereinafter the "California litigation"),[2] Dkt. 1. Thereafter, Defendant Seoul Semiconductor ("SSC") filed a motion to intervene in the California litigation after Samsung sent an indemnification letter to SSC. California litigation, Dkt. 23.

In briefing for its Motion to Intervene, SSC argued:[3]

- "Samsung has taken the position that it most likely uses SSC LEDs in at least some of the accused televisions in this case, and it has sought indemnity from SSC . . . ." (Dkt. 23 at 3);
- It has technical information regarding manufacturing of LEDs which is not available from Samsung (Dkt. 23 at 12);
- SSC is "fully available to participate in this case" (Dkt. 23 at 12);
- SSC "will not seek transfer if permitted to intervene" (Dkt. 23 at 12);
- "Since Samsung has confirmed that SSC LEDs are also used in at least some versions of the accused smart phones, even if LED Wafer removes the televisions from this case, SSC still has interests that are implicated by the accused non-television products." (SSC's Reply on Motion to Intervene, Dkt. 30 at 5); and
- "Samsung has confirmed that there are accused mobile phone products that also include SSC LEDs . . . . simply removing televisions from this case will not resolve SSC's motion to intervene or eliminate its interest in this case." (Dkt. 30 at 8).

Subsequently, on November 26, 2021, Samsung moved to transfer the case from WDTX to the Northern District of California ("NDCA") (California litigation, Dkt. 40), which was granted on August 22, 2022 following venue discovery. *Id.*, Dkt. 93. LED Wafer amended its complaint

---

[1] The '612 patent is no longer at issue in either case.
[2] Plaintiff uses the term "California litigation" for ease of reference but notes that the case was in WDTX until August 22, 2022.
[3] These docket citations are to the California litigation, which may be considered in deciding SSC's Motion to Dismiss. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

on December 16, 2022, adding SSC as a defendant and dropping the accused TV products. *See id.*, Dkt. 172 (hereinafter "FAC"). Nearly two years later, on December 18, 2024, SSC sent a letter to prior counsel claiming, without citation to any evidence and contradicting the above quotes from SSC's own briefing, a "lack of any basis supporting a claim of infringement with respect to the asserted patents" regarding SSC's chips in the accused products, which at the time only included mobile phones. *See* Mot., Ex. 1.

Although the California litigation has been pending since March 2021, no substantive progress has been made due to venue discovery, transfer briefing, and stays pending decisions from the United States Patent & Trademark Office ("USPTO"). *See, e.g.*, California litigation, Dkts. 90 (staying case pending resolution of motion to transfer), 198 (granting stay pending *ex parte* reexaminations); Dkt. 222 at 13 ("fact discovery [is] still in its early stages, and no depositions . . .[have] been noticed or taken"). Samsung petitioned for *inter partes* review ("IPR") of each of the Asserted Patents in September 2021, which were denied institution by the Patent Trial and Appeal Board ("PTAB") in March 2022. After the PTAB denied institution of the IPRs, Defendants requested five *ex parte* reexaminations of the Asserted Patents in August, September, and November 2022, which the USPTO granted. The California case was stayed on April 23, 2023. California litigation, Dkt. 198.

Following reexamination, the asserted claims were as follows:

| Patent | FAC Asserted Claims | Reexamination Disposition |
|---|---|---|
| '137 patent | 1-8 | Confirmed |
| Ex Parte Reexamination Certificate issued on September 15, 2023 | 9-11 | Canceled |
| | 12-111 | Added |
| '405 patent | 1, 3, 5, 8, 9, 11, 12, 13, 14, 17 | Amended |

| | 16 | Canceled |
|---|---|---|
| Ex Parte Reexamination Certificate issued on August 19, 2024 | 18-22 | Added |
| '822 patent<br><br>Ex Parte Reexamination Certificate issued on August 19, 2024 | 1, 2, 5, 7, 9 | Amended |
| | 11-20 | Added |

*See* California litigation, Dkt. 215 at 2.

Plaintiff filed a new suit in this District on September 15, 2025, asserting the newly issued claims. It promptly informed the California court of its intent to proceed with the FAC as the operative complaint in that case, with only the surviving claims of the '137 patent at issue and only asserted against the products accused in the FAC (since the originally asserted claims of the '405 and '822 patents were all canceled). *See* California litigation, Dkt. 276. After filing this Action, LED Wafer and Samsung Defendants reached an agreement to waive service for an extension to answer. Dkt. 9. LED Wafer offered the same agreement to SSC, who did not agree, as is its right, but the parties reached agreements to extend SSC's time to respond. Dkts. 6, 11.

When SSC did not agree to waive service, LED Wafer underwent time and expense to research possible service avenues, eventually finding Mr. Kevin Park's LinkedIn page which listed him as a vice president of SSC and listed his location as New Jersey. Ex. A, K. Park LinkedIn Page. Mr. Park's personal Facebook page simply listed his employer as "Seoul Semiconductor" (Ex. B, K. Park Facebook Page (showing the same logo as SSC)) and when LED Wafer's process server called Mr. Park, he confirmed he was employed by SSC. *See* Mot., Ex. 2-B ("Kevin Changjin Park, personally, confirmed he is Vice President thereof"). Mr. Park was served at his residence in New Jersey on October 24, 2025. *Id.* LED Wafer's counsel emailed the proof of

service to SSC's counsel in the California litigation, who is also representing SSC in this Action (but who had not yet entered his appearance), on October 29, 2025. Mot., Ex. 3 at 2. SSC's counsel refused service, stating that they are not authorized to receive service and stating, without citation to any caselaw or evidence, that Mr. Park is not an SSC employee or officer. *Id.*

On the agreed-upon deadline, SSC filed this behemoth Motion to Dismiss on six bases: improper service, lack of personal jurisdiction, the first-to-file rule, and failure to state a claim for direct, induced, and willful infringement. *See generally* Mot. (Dkt. 13). Its Motion should be denied on all counts.

## IV.    LEGAL STANDARD

### A.    Proper Service

A defendant may move to dismiss under Rule 12(b)(5) if plaintiff fails to serve a defendant with process under Rule 4. FED. R. CIV. P. 4; *see also id.* 12(b)(5). "[T]o avoid dismissal, the plaintiff must make a *prima facie* showing of proper service." *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, 697 F. Supp. 3d 635, 641 (E.D. Tex. 2023) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)).

Under Rule 4(e)(1), a party may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). Further, Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders," FED. R. CIV. P. 4(f)(3); *see also Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018).

### B.    Personal Jurisdiction

This Court is familiar with the standards for specific personal jurisdiction. *See, e.g.*, *Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-CV-00449-JRG, 2024 WL 4519760, at *1-2 (E.D. Tex. Oct. 17, 2024). The court "has considerable procedural leeway" when

ruling on a motion to dismiss under Rule 12(b)(7). *Cat5 Res., LLC v. CB Towers, LLC*, No. 1:19-CV-87, 2019 WL 13149916, at *2 (E.D. Tex. May 22, 2019) (citation omitted); *see* FED. R. CIV. P. 12(b)(7); *id.* 4(k)(2) (establishing personal jurisdiction over foreign defendant).

C.    **First-to-File**

Mechanical application of the first-to-file rule is not required on every occasion and may very well be inappropriate in specific instances. *See, e.g., Hunt-Collin Elec. Co-op, Inc. v. Rayburn Country Elec. Co-op, Inc.*, No. CIV. A. S-87-211-CA, 1988 WL 428654, at *2 (E.D. Tex. Feb. 5, 1988). "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 603 (5th Cir. 1999). Substantial overlap exists if "the core issue was the same or if much of the proof adduced would likely be identical." *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp*., 665 F.3d 671, 678 (5th Cir. 2011). If overlap is less than complete, courts also consider "the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power Ltd. v. Syntek Fin. Co*rp., 121 F.3d 947, 951 (5th Cir. 1997). Ultimately, the application of "the first-to-file rule is discretionary, and involves determinations concerning 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Tex. Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1993) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co*., 342 U.S. 180, 183 (1952)).

D.    **Failure to State a Claim**

"In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Advanced Integrated Cir. Process LLC v. United Microelectronics Corp*., No. 2:24-CV-623-JRG, 2025 WL 2784244, at *2 (E.D. Tex. Sept. 30, 2025) (citing *Lormand v. US

*Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face," i.e., "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 5.    Direct Infringement

To state a claim of direct infringement, the plaintiff need only give the defendant "fair notice" of the infringement claim and "the grounds upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (citation omitted). "A plaintiff is not required to prove its case at the motion to dismiss stage.'" *Arigna Tech. Ltd.*, 697 F. Supp. 3d at 649 (quoting *Iqbal*, 556 U.S. at 678).

### 6.    Induced Infringement

Induced infringement occurs if a party has "specifically intended" its "customers to infringe" and "knew that the customer's acts constituted infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *see also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("§ 271(b) requires knowledge that the induced acts constitute patent infringement").

### 7.    Willful Infringement

"Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement, but the complaint must adequately allege factual circumstances in which the patents-in-suit [are] called to the attention of the defendants." *Soverain IP, LLC v. Microsoft Corp.*, No. 217CV00204RWSRSP, 2018 WL 1465792, at *2 (E.D. Tex. Mar. 26, 2018) (citations omitted); *see also WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016)

("Knowledge of the patent alleged to be willfully infringed" is a "prerequisite."). "[A]n allegation that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for willful infringement." *Adaptive Spectrum & Signal Alignment, Inc. v. Charter Commc'ns, Inc*., No. 2:24-CV-00124-JRG-RSP, 2025 WL 1341892, at *13 (E.D. Tex. Mar. 31, 2025), *report and recommendation adopted*, 2025 WL 1539838 (E.D. Tex. May 29, 2025).

## V.    ARGUMENT

### A.    LED Wafer's Service on SSC Was Proper.

LED Wafer properly served SSC by serving SSC's officer, Kevin Park, in the United States. Though SSC disputes that Mr. Park is an SSC officer, LED Wafer has made its prima facie case on that point, and at the very least SSC cannot deny it received notice of the summons.

#### 1.    The Hague Convention Does Not Apply to Service on a Foreign Defendant Within the United States.

In arguing that SSC, as a Korean company, can only be served pursuant to the Hague Convention, SSC conflates service on a foreign *defendant* with service "in a foreign *country*." FED. R. CIV. P. 4(f) (emphasis added). "The only transmittal to which the Convention applies is a transmittal abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 704, 707 (1988). Where service must occur and whether a foreign defendant can properly be served without a transmittal abroad depends on the "internal law of the forum." *Id.* at 704, 707 (finding that "service on a domestic agent" within the U.S. was not subject to the Hague Convention). Here, LED Wafer properly served SSC *within the United States* via service on an officer of SSC, Kevin Park in New Jersey. The Hague Convention is thus inapplicable. Instead, the relevant issue is whether this service in New Jersey was effective under the Federal Rules of Civil Procedure and all other applicable federal and state laws (it was).

### 2.  Mr. Park's Admissions Make the Prima Facie Case that He is an Officer of SSC, and LED Wafer's Disputed Contrary Evidence is Irrelevant.

There is no question that under FRCP 4(h)(1)(B), delivery "in a judicial district of the United States" of "a copy of the summons and of the complaint to an officer" of a corporation is a valid means of service.  SSC argues that even if the Hague Convention did not apply, service was invalid because Mr. Park was not an officer of SSC, only of SSC's domestic subsidiary, SSI.  Mr. Park's status as an officer of SSC at the time of service is disputed, however. For example, a LinkedIn profile for Mr. Park lists him as a vice president of **SSC**, not SSI. Ex. A. SSC nowhere denies that Mr. Park created and maintained that profile himself. Likewise, the process server who served Mr. Park, under penalty of perjury, also declared that Mr. Park identified himself as a vice president of SSC.  Mot., Ex. 2-B. In the correspondence leading to this Motion, LED Wafer pointed to this evidence, and SSC merely denied that Mr. Park was an officer of SSC without providing any evidence or even an explanation contradicting this prima facie evidence from LED Wafer. Mot., Ex. 3 at 3 ("your summons (and the affidavit of service) incorrectly stated that Kevin Park is the Vice President of [SSC]. He is not, and thus . . . your service attempt was defective.").

While SSC points to additional, disputed evidence on whether Mr. Park was an officer of SSC when served by LED Wafer, that is irrelevant: LED Wafer has made a prima facie case and this ends the issue. *See Arigna*, 697 F. Supp. 3d at 641 ("[T]o avoid dismissal, the plaintiff must make a *prima facie* showing of proper service."). SSC points to an additional LinkedIn page that lists Mr. Park as a vice president of SSI (Mot., Ex. 2-A (listing Mr. Park's employer as "Seoul Semiconductor," not identifying whether the company is SSI or SSC)), and now for the first time submits a self-serving affidavit from Mr. Park stating he is not an officer of SSC and setting forth his recollection of the encounter with the process server. But this does not erase contrary evidence. Whether on a motion to dismiss or for summary judgment, this court must view the facts in the

10

light most favorable to LED Wafer and cannot dismiss if there is a live issue of fact. *See, e.g.*, *Advanced Integrated Cir. Process*, 2025 WL 2784244, at *2 ("In evaluating whether a Rule 12(b)(6) movant is entitled to relief, the Court 'accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff.'"); *Way v. City of Missouri City*, 133 F.4th 509 (5th Cir. 2025) (warning against "evaluat[ing] the credibility of the witnesses, weigh[ing] the evidence, or resolv[ing] factual disputes" even on summary judgment). If the Court were inclined to resolve this dispute now, at the very least LED Wafer would be entitled to jurisdictional discovery to test SSC's new claims, and on related issues such as whether SSI is SSC's alter ego. *See Lisson v. ING GROEP N.V.*, 262 F. App'x 567, 570–71 (5th Cir. 2007) (explaining when process can be served on a foreign corporation by serving its domestic subsidiary, and ruling district court may have abused discretion by dismissing claims for lack of proper service without allowing relevant discovery). But here that is not even necessary because LED Wafer has made its required prima facie showing of proper service.

### 3.   In the Alternative, Under New Jersey Law, Service on SSI Effected Service on SSC Because SSI Functions as SSC's Alter-Ego.

Even if Mr. Park is found to be an officer of SSI only, service is still valid if, under either New Jersey or Texas state law, service on SSI qualifies as effecting service on SSC.  *See* FED. R. CIV. P. 4(e)(1), 4(h)(1) (providing that service is valid if it follows state law "in the state where the district court is located *__or__* where service is made") (emphasis added);[4] *Volkswagenwerk*, 486 U.S. at 707 ("Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends."). This is easily shown under New Jersey law.

---

[4] In suggesting that only New Jersey law "applies here because LWS's service attempt occurred in that state," Mot. at 7 & n.3, SSC misleadingly omits from its quotation of Rule 4 the phrase "in the state where the district court is located or . . . ."

Under New Jersey law, service on a wholly owned subsidiary confers jurisdiction over the foreign parent "if the subsidiary is an alter ego or agent of the parent." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008). In deciding "if a subsidiary is acting as an agent of the parent," a district court considers:

> (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies.

*Id.* at 513–14 & n.3 (citations omitted) (finding service was proper where parent entity (VWAG) owned 100% of the US subsidiary (VWoA), where VWoA was the sole authorized US Importer and distributor of VWAG vehicles, and where VWAG had the power to appoint VWoA's officers).

Here, LED Wafer has pled or otherwise put forward sufficient evidence that SSI is an alter-ego of SSC to avoid dismissal or at least be entitled to discovery on the issue.  In its Complaint, LED Wafer alleges that "Seoul Semiconductor *directly and/or through subsidiaries or intermediaries* (including distributors, retailers, and others)" commits acts of infringement in this District. Compl. ¶ 19. SSI admits to be, at the very least, partially owned by SSC.  *See, e.g.*, *Document Security Sys., Inc. v. Seoul Semiconductor Co., Ltd.*, 2:17-cv-308, Dkt. 11 (E.D. Tex. Apr. 28, 2017) (SSI identifying SSC as owning 10% or more of its stock); *Nat. Cheng Kung Univ. v. Seoul Semiconductor Co., Ltd.*, 2:13-cv-00465-JRG-RSP, Dkt. 19 (E.D. Tex. Dec. 18, 2013) (same).  Other publicly available evidence demonstrates that the two entities are almost interchangeable. For example, the two companies share the same name, "Seoul Semiconductor," the same logo, and an Internet search of "Seoul Semiconductor, Inc." links to SSC's website. Ex. C, Screenshot of Google Search for "Seoul Semicondcutor Inc." (Dec. 30 2025); *see also* Seoul Semiconductor (last visited Dec. 30, 2025), https://www.seoulsemicon.com/en. SSC's website

discusses its "global network" and lists United States office locations—locations that it now disclaims and alleges belong solely to SSI. *See* "Global Network," Seoul Semiconductor (last visited Dec. 28, 2025), https://www.seoulsemicon.com/en/company/information/globalnetwork. SSC's holding company, Seoul Biosys Co., Ltd., also lists SSC as the "Top Controlling Company," with SSI as one of the "[s]ubsidiary companies under the same control." Ex. D, Annotated Excerpts, Seoul Biosys Co., Ltd. 2025 Year Financial Report, Korean Fin. Servs. Comm'n (last visited Jan. 5, 2026), kind.krx.co.kr/external/2025/11/14/000946/20251114002088/11013.htm?utm (translated using Google translate); *see also id.* at 4 (entities are "consider[ed as] a single business segment . . . so there is no separate division of business divisions."). The whole confusion with which company(ies) Mr. Park is employed by is caused by the two entities failing to maintain separateness. And obviously, given SSC's response, the companies were sufficiently connected that service on Mr. Park resulted in actual notice to SSC.

Although SSC claims it lacks U.S. operations, SSC, rather than its U.S. subsidiary SSI, was the entity that intervened in the original suit in WDTX. *See, e.g.*, California litigation, Dkt. 23 at 9 ("SSC is the only entity in possession of information necessary to fully defend those products"), 10 ("SSC is the only entity that has an interest in developing non-infringement defenses . . . and . . . the only entity that is able to adequately represent those interests."). This is either a prima facie showing sufficient to avoid dismissal or a preliminary showing sufficient for jurisdictional discovery. *See, e.g.*, *Lisson v. ING GROEP N.V.*, 262 F. App'x 567, 570–71 (5th Cir. 2007) (ruling district court may have abused discretion by dismissing for lack of proper service without allowing discovery into alter ego theory).

Ultimately, SSC was clearly not prejudiced by either manner of service—either the service on Mr. Park or service via email to its domestic counsel—as it received actual notice and was

given sufficient time to respond to the Complaint. SSC in fact even received multiple extensions on its deadline to answer. Service on SSC was therefore proper under New Jersey law, and SSC's arguments to the contrary are unpersuasive.

### 4.   Alternatively, Substitute Service Under Rule 4(f)(3) Should be Permitted.

In the alternative, if the Court finds service on Mr. Park was somehow ineffective, LED Wafer respectfully requests that the Court authorize substitute service via email on SSC's domestic counsel or service on its domestic subsidiary SSI pursuant to Rule 4(f)(3).  As a matter of federal procedural law, interpretations of Rule 4(f) are governed by the law of the circuit in which this court sits, i.e., the Fifth Circuit.  Under Fifth Circuit law, the Hague Convention "does not displace Rule 4(f)(3)," and courts may accordingly authorize email service on a foreign corporation. *Nagravision*, 882 F.3d at 498 (upholding order of email service on foreign defendant and rejecting defendant's argument that service was not effected pursuant to the Hague Convention).

Courts in this Circuit, including this one, "routinely direct service on an international defendant's [U.S.] counsel under Rule 4(f)(3)." *SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No. 2:20-CV-00003-JRG, 2020 WL 6578411 (E.D. Tex. June 15, 2020) (authorizing email service on foreign parent's domestic counsel where foreign parent was by choice litigating against plaintiffs in other states and foreign parent's litigation of service issue showed it had actual notice of the case); *see also, e.g.*, *Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13-CV-369, 2014 WL 11342502, at *4 (W.D. Tex. July 2, 2014) (granting request to serve foreign parent through service on its domestic subsidiary or the two's domestic outside counsel); *Metro Equip. & Rental Co. v. Tsurumi Mfg. Co.*, No. PE:21-CV-30-DC-DF, 2021 WL 7500608 (W.D. Tex. Sept. 10, 2021) (granting request to serve foreign parent through domestic *subsidiary's* counsel or the defendants directly through fax).

"[A]lternative service through these means is especially appropriate [where] defendants

have actual notice of and are actively participating in this action," the whole purpose of Rule 4 and other service provisions. *SIMO Holdings*, 2020 WL 6578411, at *3 (alteration original) (quotation omitted). Similarly, SSC cannot contest that it did not receive notice of this Case because it has filed a Motion to Dismiss. *See generally* Mot. LED Wafer, moreover, not only served Mr. Park in person but also emailed SSC's counsel in the California case, Radulescu LLP, proof of service on Mr. Park and a copy of the Complaint. Mot., Ex. 3 at 2-3 (acknowledging receipt of complaint but stating that SSC's counsel was not authorized to receive such service on SSC's behalf). Radulescu LLP also represents SSC in this Case. *See, e.g.*, Mot. (filed by Radulescu LLP).

And LED Wafer need not show that service through the Hague convention is impossible; "courts routinely permit alternative service due to the delay and expense associated with service under the Hague Convention." *Id.* at *2 (citing *Affinity Labs of Tex.*, 2014 WL 11342502, at *3 (collecting cases)); *see also, e.g.*, *Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-CV-01827-N, 2018 WL 3330022, at *5 (N.D. Tex. Mar. 16, 2018) (allowing service on domestic counsel to "save the parties the time and expense associated with proceeding solely via Hague Convention procedures").  Granting LED Wafer's request for alternate service would also avoid wasting further party and judicial resources on litigating what would otherwise be a complex issue of alter egos and agency that is ultimately not important to the merits. Despite this robust case law allowing such service, SSC's Motion says nothing at all about why domestic service should not be authorized here even if the Court is otherwise inclined to rule in SSC's favor on service.

### B.    This Court has Personal Jurisdiction over SSC.

This Court has personal jurisdiction over SSC due to SSC's significant business and legal connections to this District, including connections with Samsung Defendants, making it fair and expected for this Court to exercise personal jurisdiction over SSC. The Fifth Circuit permits a finding of jurisdiction even when there is only "mere forseeability or awareness" that the

defendant's products will be used in the forum state. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 419 (5th Cir.1993) (quoting *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 111 (1987)). Any conflicts between the parties' factual allegations must be resolved in favor of plaintiff. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008); *Universal Connectivity Techs*., 2024 WL 4519760, at *3 (same).

For instance, SSC purposefully places its "products into the stream of commerce[, i.e., by selling its LEDs to Samsung Defendants in Texas,] with the expectation that they will be purchased by consumers in the forum State." *AGIS Software Dev. LLC v. HTC Corp*., No. 2:17-CV-00514-JRG, 2018 WL 4680557, at *2 (E.D. Tex. Sept. 28, 2018) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp*., 21 F.3d 1558, 1566 (Fed. Cir. 1994)); *see also* Compl. ¶¶ 3-11, 19, 29, 34, 76 (pleading the same). This is true under both stream-of-commerce theories applied by the Federal Circuit because SSC knows a likely destination of its products is Texas, where Samsung Defendants have substantial presence, and SSC could reasonably have anticipated being brought into Court. *Beverly Hills*, 21 F.3d at 1566; *see also* California litigation, Dkt. 30 at 4 ("SSC knows that it sells its LED components directly to Samsung."); *In re Samsung Elecs. Co., Ltd., Samsung Elecs. Am., Inc.*, No. 25-cv-00129 (Fed. Cir. July 9, 2025) (non-precedential) (denying petition to vacate this Court's order denying Samsung's motion to transfer to NDCA); Compl. ¶¶ 3–7, 10–11, 16–18, 20 (discussing Samsung's various contacts with Texas).

SSC has itself even chosen courts of this State as a forum for its disputes, showing that litigating in this State would not be a hardship. *See, e.g.*, California litigation, Dkts. 23, 30 (briefing regarding SSC's motion to join); *Seoul Semiconductor Co., Ltd. v. Fry's Elecs., Inc.*, 18-cv-386 (E.D. Tex. 2018) (patent infringement suit filed by SSC involving LEDs); *Seoul Semiconductor Co., Ltd. v. Nichia Corp*., 9:07-cv-273 (E.D. Tex. 2007) (same).

16

Further, despite SSC's claims that it should no longer be a defendant in this case because televisions are not at issue, its own admissions in the California litigation indicate that SSC's LEDs are also used in Samsung mobile phones: "Since Samsung has confirmed that SSC LEDs are also used *in at least some versions of the accused smart phones*, even if LED Wafer removes the televisions from this case, *SSC still has interests that are implicated by the accused non-television products*." California litigation, Dkt. 30 at 5 (emphasis added). While SSC now relies on attorney argument alone to suggest it does not supply chips to the particular phones accused in this case (Mot. at 4), it is far from clear that Samsung agrees, and SSC and Samsung have not made anything near a sufficient evidentiary showing on this point. SSC cannot escape personal jurisdiction in the face of such bald admissions. *See Jackson v. Gehl Co*., No. CIV.A. 2-09-CV-00048, 2009 WL 3448135, at *2 (E.D. Tex. Oct. 22, 2009) (denying motion to dismiss for lack of personal jurisdiction where defendant designed, manufactured, and sold products at issue to its co-defendant with substantial sales and offices in Texas).

### C. This Case Was First Filed in this District, and it is Not Proper to Dismiss Based on Another Case Involving Different Patents, Products, and Parties.

As its third-in-line argument, SSC asserts that the first-to-file rule applies and that this action should be dismissed in favor of the California litigation, which involves different patents, products, and parties, and was filed in 2021 before any of the claims or products in this case even existed.[5] SSC misapplies the first-to-file rule, and it is SSC that is seeking to manipulate venue by pretending there is overlap where there is not. SSC is way off in claiming that "the overlap between [this suit and the California Litigation] is complete" because they involve the "same patents, the same products, and the same issues," Mot. at 11.

---

[5] Plaintiff plans on moving to voluntarily dismiss the California litigation. *See* Ex. E, 2026-01-05 A. Liu Email to Defs.

17

First, there is no overlap in the patents between this case and the California litigation. In this case LED Wafer asserts only the '405 and '822 patents, whereas only the '137 patent is presently active in the California litigation. All the '405 and '822 claims originally asserted in the California litigation were canceled or amended during reexamination proceedings and are therefore not at issue in that case. The Federal Circuit has held that cancellation of asserted patent claims renders a suit based on them moot. *See Target Training*, 645 F. App'x at 1025–26 (affirming mootness of case "despite the existence of the newly added claims," as plaintiff "'obviously' did not allege that [defendant] infringed on the new claims at the time it filed its complaint because the newly added claims did not exist"). When Defendants' reexaminations created new claims to those patents, LED Wafer was thus "free to commence a new litigation asserting infringement of the newly added claims," as it did here in its chosen forum based on the facts as they existed at the time of the complaint. *Id*. at 1025. This case is thus the first-filed pending action on the reexamined '405 and '822 patents.

SSC now tries to manipulate the first-to-file rule by arguing that the '405 and '822 patents are somehow still at issue in the California litigation, but this mistakes both the facts and the law. All previous claims or counterclaims at issue in the California litigation on the '405 and '822 patents were mooted by the cancellation and amendment of the then-asserted patent claims in reexamination. *See Netflix, Inc. v. Broadcom Inc.*, 793 F. Supp. 3d 1168, 1192 (N.D. Cal. 2025) (finding all claims asserted in the complaint to be invalid and dismissing "with leave to amend as to any other allegedly infringed claims of the asserted patents" due to lack of "operative complaint"). Although LED Wafer explored adding the new, reexamined claims of those patents to the California litigation through a Second Amended Complaint ("proposed SAC"), Defendants opposed LED Wafer's proposed SAC and LED Wafer then informed the court that LED Wafer

18

would proceed solely on the remaining '137 patent as asserted in its FAC, which names different products and parties than this suit. *See* California litigation, Dkt. 276 at 2; Dkt. 272 (terminating LED Wafer's motion for leave to amend with the ability to resubmit); Dkt. 294 (FAC). Moreover, some of the products accused in this case were released after the proposed SAC was filed and were not part of the accusations in that document that never became part of the California litigation. *See, e.g.*, *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed. Cir. 2012) ("While a party may seek to pursue claims that accrue during the pendency of a lawsuit adjudicated in that lawsuit, the party is not required to do so"); *see also* Samsung for Business, "Samsung Unpacked January 2025" (Jan. 22, 2025), https://insights.samsung.com/2025/01/22/samsung-unpacked-january-2025-full-replay-and-highlights/ (announcing release of S25 in Jan. 2025); Iskra Petrova, "Galaxy Z Fold 7 Release Date," Phone Area, https://www.phonearena.com/galaxy-z-fold-7-release-date-price-features-news (discussing release of ZFold7 on July 9, 2025); *compare* California litigation, Dkt. 245, Ex. 1 (proposed SAC filed Nov. 19, 2024).

And while in connection with those events in the California litigation LED Wafer circulated amended infringement contentions that would have alleged infringement of the new claims, SSC neglects to mention that those contentions were never approved by the court as was required by local rules to give them any effect. *See* N.D. Cal. Pat. L. R. 3-6 (infringement contentions may be amended "only by order of the Court upon a timely showing of good cause."); *see also* California litigation, Dkt. 290 at 5-8 (discussing mootness of claims).[6] Finally, to the

---

[6] LED Wafer's current counsel understands that this required leave was never granted, as prior counsel sent these contentions to provide notice to Defendants while requesting leave through a deadline to amend infringement contentions (California litigation, Dkt. 222 at 15; Dkt. 252 at 2; Dkt. 259 at 2 (joint stipulation noting the current deadline for Plaintiff to serve contentions was "None")), which the Court declined to enter (Dkt. 237 at 2; Dkt. 253).

extent SSC or Samsung intend to pursue affirmative defenses requesting declaratory judgment of infringement or invalidity on the '405 or '822 patent, those would be first-filed in this case too, as SSC points to no place where either defendant could have and did plead such defenses as to non-mooted claims in any court. Any such defenses must be pursued here, where infringement allegations on existing claims of the '405 and '822 patents were first filed.

Likewise, the products at issue in the two suits are different.  This case accuses the Samsung S25 phones, e.g., S25, S25+, S25 FE, S25 Ultra, S25 Edge; the Galaxy A phones, e.g., the A56 5G, A36 5G, A26 5G, A16 5G, and A35 5G; the Galaxy Z phones, e.g., the Z Fold7, Z Flip7, Z Flip7 FE, Z Fold6, and the Z Flip6 (Compl. ¶ 28), and the California litigation accuses the earlier Galaxy S22 phones as the exemplary infringing product. *See, e.g.,* California litigation, Dkt. 172 ¶ 25. While LED Wafer's prior counsel may have sought to add some (but not all) of the presently accused products to the California litigation, again, this attempt was defeated when Defendants opposed LED Wafer's motion for leave to file its proposed SAC and the court never granted leave for amendment.  The products accused in this suit are different phones, and it would be at best premature to determine whether they are so substantially similar as to support the first-to-file rule.

The parties are also not all the same. The Complaint in this case names a new defendant, Samsung Austin Semiconductor, LLC, which will bring different issues to the case and which has a principal place of business in this state. Further, it remains to be seen which of the two actions SSC will remain a Defendant in, as it has moved to dismiss in both cases. As shown above, SSC's briefing appears to establish: (1) Samsung brought SSC into the California litigation; (2) SSC is relying on Samsung to say which Samsung products use SSC products; but (3) Samsung and SSC agree some Samsung smartphones have SSC LED chips in them; and yet (4) SSC fails to point to evidence that the Samsung products in the California litigation or this one use LED chips other

than SSC's. Even if SSC were right that the California litigation is first-filed (it is not) it would be premature to treat the parties as the same for purposes of a first-filed doctrine analysis.

Even if this Court found the California litigation to be the first-filed case (it is not), courts have found that these sorts of differences in patents, products, or parties counsel against application of the first-to-file rule. *Document Generation Corp. v. Allscripts, LLC*, No. 6:08-CV-479, 2009 WL 10677279 (E.D. Tex. May 19, 2009) is illustrative. There, the alleged first-filed suit involved "the same Plaintiff, seven of the same Defendants, the parent patent of the patent at issue in this case, and some of the same accused products." *Id.* at *4. Nevertheless, the court ruled that "Defendants have demonstrated only the potential for overlap between this case and the [other] action" given that "differences [between the patents] could have a substantial impact on claim construction and other issues in the case," and "it is not clear that the same set of products has been accused in both cases." *Id.* at *4–5; *see also, e.g.*, *Adobe Sys. Inc. v. Wowza Media Sys., LLC*, 72 F. Supp. 3d 989, 995 (N.D. Cal. 2014) (finding no claim-splitting where plaintiff-patentee accused in second suit product released during first suit, despite counsel's prior argument that the infringement theory was "essentially the same" for the old and new products); *In re Echostar Corp*, 388 F. App'x 994 (Fed. Cir. 2010) (denying writ of mandamus to transfer under first-to-file rule where defendants and accused technology were different, notwithstanding some overlap between the asserted patent claims and issues, where claim construction and substantive discovery had not begun in the prior case). Given the differences between this suit and the California litigation on *all* of these factors, this Court should deny SSC's motion to dismiss or transfer under the first-to-file rule in any event.

None of SSC's cases on the first-to-file rule are persuasive. Indeed, most of SSC's cases do not even involve patents, underscoring that SSC cannot find a patent case on point and is

21

seeking to stretch the law in its favor. SSC fails to cite any cases involving attempts by a patentee to bring a new suit on reissued claims after a suit they previously brought was mooted by a reexamination proceeding.  The most arguably relevant case—although far from being on point— is *Mann Mfg., Inc. v. Hortex*, 439 F.2d 403 (5th Cir. 1971), which involved a patentee's attempt to file a separate suit on a later-issued patent.  But there, the exact same products and actions by the manufacturer were at issue, and the later-filed suit was the patentee's second attempt to subvert the plaintiff-manufacturer's first-filed declaratory judgment suit.  *Id.* at 406–07.  In other words, the manufacturer, as plaintiff in the first suit, was entitled to deference as to its choice of forum. But here, LED Wafer is plaintiff in both actions.  Its choice of forum should thus be respected absent compelling circumstances otherwise.  *See Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757 (E.D. Tex. 2000) (quoting *McCuin v. Texas Power & Light Co.,* 714 F.2d 1255, 1261–62 (5th Cir. 1983)) ("[A] court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.").

This Court should thus reject Defendants' attempts to have their cake and eat it too. SSC and Samsung filed reexaminations against the '405 and '822 patents and should have known those reexaminations could result in new claims that LED Wafer would be "free to commence [in] a new litigation asserting infringement of the newly added claims," in the forum of its choosing.  *Target Training*, 645 F. App'x at 1025. When those new claims were created, SSC successfully opposed LED Wafer's attempts to add the newly issued claims (as to some but not all of the products accused here) to the California litigation. The procedural machinations have been on the part of Defendants, not Plaintiff. SSC swore it would not disturb LED Wafer's choice of forum by attempting to transfer the case out of Texas when it first intervened (California litigation, Dkt. 23),

remained silent when Samsung filed its motion to transfer in WDTX (*id.*, Dkt. 40 (not joining the motion)),[7] and now says Texas is an inappropriate forum.

SSC's remaining arguments simply seek to paint LED Wafer in a negative light without tying it to any issue before the Court. Those arguments are both irrelevant and inaccurate. For instance, LED Wafer is not "attempting to *escape* years of adverse developments in NDCA," as SSC claims. Mot. at 13. SSC has not pointed to any significant adverse ruling by the NDCA court. In fact, substantive discovery has barely begun in the California litigation, and that occurred before the claims and products asserted in this case even existed. *See, e.g.*, California litigation, Dkt. 222 at 13 (stating that "fact discovery was still in its early stages, and no depositions of either side's fact witnesses had been noticed or taken" prior to the stay pending reexaminations). Claim construction has not been completed. *See id.* (requesting the Court enter deadlines regarding claim construction, including claim construction discovery). The reexamination proceedings by the USPTO that canceled or amended LED Wafer's patent claims were not tied to a specific federal district court.  SSC also repeatedly refers to a "Rule 11 letter" that was tied to patent claims and products that are not at issue in this case, and in any event SSC has not turned that letter into a Rule 11 motion, nor could it credibly do so.[8] Further, the NDCA court has not yet otherwise ruled on SSC's argument that "LWS repeatedly failed to identify a single allegedly infringing product

---

[7] While the WDTX court previously—over three years ago—found the equities favored transfer, the situation has since evolved. *See* California litigation, Dkt. 93 (Order granting Samsung's motion to transfer). Since that order granting transfer to the NDCA, Samsung has expanded its presence in Texas, which would skew the transfer factors in favor of Texas rather than California. *See, e.g.*, Compl. ¶ 4 (discussing Samsung's receipt of federal funds to develop chip manufacturing and establishing a new plant in Taylor, Texas); *see also In re Samsung Elecs. Co., Ltd., Samsung Elecs. Am., Inc.*, No. 25-cv-00129 (Fed. Cir. July 9, 2025) (denying petition to vacate this Court's order denying Samsung's motion to transfer to NDCA).

[8] *See* Ex.F, 2026-01-05 Ltr from J. Bergsten to Defs.

made by SSC," Mot. at 11, which as explained elsewhere in this Response, LED Wafer disputes. Nor did LED Wafer's former counsel's withdrawal signal anything about the NDCA court's views on the merits of LED Wafer's claims. *See* California litigation, Dkt. 268. And SSC's repeated claims of forum shopping fall flat for the reasons described above—this is the first-filed case on all issues in this case, and it is SSC that is forum shopping by trying to revive and litigate past issues mooted by SSC's own reexamination in order to cling to SSC's preferred forum of NDCA.

### D. The Complaint Plausibly Pleads Causes of Action for Infringement.

LED Wafer has sufficiently pled all of its claims, including for direct and induced infringement, as well as willfulness. SSC's Motion to Dismiss fails on all counts.

#### 1. LED Wafer Has Pled Direct Infringement.

A plaintiff need not, in its pleading, prove all aspects of its claims, or even make those claims probable. *Bill of Lading*, 681 F.3d at 1341. A plaintiff need only plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *Id*. at 1341 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556).

Here, LED Wafer's Complaint sufficiently alleges SSC's direct infringement. The Complaint pleads that SSC "acts as a third-party LED supplier to Samsung for many of the Accused Products, including accused Samsung mobile phones." Compl. ¶ 9. LED Wafer further alleges that SSC "supplies flash LEDs to Samsung that are incorporated into the Accused Products" and that "these LEDs supplied by [SSC] to Samsung provide infringing functionality or structure to the Accused Products." Compl. ¶ 29. And contrary to SSC's assertions, LED Wafer alleges—more than once—that SSC has committed acts of direct infringement in the United States: "Defendants continue to make, use, sell, offer for sale, and import ***into the United States*** products that Defendant know infringe the '405 Patent . . . ." Compl. ¶ 57 (emphasis added); *see also id.* ¶ 19 ("has committed and continues to commit acts of infringement in this District by . . . offering

to sell and selling products and/or services that infringe the Asserted Patents. Moreover, Seoul Semiconductor actively directs its activities to customers located in the State of Texas.").

SSC claims that LED Wafer lacks information regarding SSC's activities within the United States "[d]espite years of the California litigation," but discovery was stayed for much of the California case, as SSC and Samsung Defendants filed proceedings with the USPTO and promptly requested a stay pending those proceedings, and never proceeded on the claims or products at issue in this case. *See, e.g.*, California litigation, Dkt. 198 (Order Granting SSC and Samsung Defendants' Motion to Stay Pending Ex Parte Reexamination). Such argument, moreover, is directed toward factual disputes and is improper at the motion to dismiss stage. *See Maxell, Ltd. v. Coretronic Corp.*, No. 5:24-CV-00088-RWS-JBB, 2025 WL 1675347, at *16 (E.D. Tex. May 16, 2025), *report and recommendation adopted*, No. 5:24-CV-88-RWS-JBB, 2025 WL 2784251 (E.D. Tex. Sept. 30, 2025) (denying motion to dismiss defendant's motion to dismiss direct infringement claim as "[d]efendants' arguments are directed toward factual disputes with the complaint, including the merits of [plaintiff's] theories of the location of sale by Defendant"). More notably, SSC does not contend that it has insufficient notice of the allegations against it. *See id.* (noting "Defendants do not claim that they have insufficient notice of the allegations against them; rather, Defendants contend [a non-party] is responsible for the allegedly infringing activity."). Even if resolution of such a dispute were appropriate at this stage (it is not), SSC relies solely on attorney argument, without any evidence, that the Samsung phones in this case are not among the phones for which SSC admittedly provides LED chips. (Mot. at 4). SSC's arguments that the direct infringement allegations should be dismissed is therefore unpersuasive.

LED Wafer has adequately pled direct infringement at the pleadings stage.

### 2.   LED Wafer Has Adequately Pled Induced Infringement.

The Complaint also sufficiently pleads that SSC induced Samsung's infringement of the

Asserted Patents. It is undisputed LED Wafer's Complaint sufficiently pled SSC had knowledge of the Asserted Patents for induced infringement purposes. *See generally* Mot. at 16 (failing to argue that LED Wafer did not allege prior knowledge of the Asserted Patents for induced infringement); *but cf. id.* at 16-17 (setting forth conclusory arguments that LED Wafer failed to allege pre-suit knowledge from before the California litigation). In any event, the knowledge requirement is well supported by LED Wafer's allegations of willful infringement discussed below. *See Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372–73 (Fed. Cir. 2015) ("inducement knowledge requirement may be satisfied by a showing of actual knowledge or willful blindness"); *Commil USA, LLC v. Cisco Sys., Inc.,* 720 F.3d 1361, 1366 (Fed. Cir. 2013), *cert. granted on other grounds,* 574 U.S. 1045 (2014); *see also Commil USA, LLC v. Cisco Sys., Inc*., 575 U.S. 632, 646 (2015) ("belief in invalidity will not negate the scienter required under § 271(b)").

> a. *LED Wafer Sufficiently Alleges how SSC induced Its Customer, Samsung, to Infringe the Asserted Patents.*

To properly plead induced infringement, "a plaintiff must allege facts to plausibly support the assertion that the defendant specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement." *Uniloc USA, Inc. v. Motorola Mobility LLC*, No. 2:16-CV-989-JRG, 2017 WL 3721064, at *2 (E.D. Tex. May 15, 2017) (citing 35 U.S.C. § 271(b)). Further, "[c]ircumstantial evidence may suffice to prove specific intent." *AlexSam, Inc*., 119 F.4th at 46 (citation omitted). These allegations are assumed to be true, and to the extent the defendant disputes those allegations, that is a factual inquiry not suitable for resolution on a motion to dismiss. *Uniloc*, 2017 WL 3721064, at *4 ("assuming these well-pleaded facts as true, and viewing them in the light most favorable to the plaintiff, the Court finds that [plaintiff] has adequately stated a claim for relief under 12(b)(6)").

> b. *SSC specifically intended for Samsung to infringe the Asserted Patents.*

26

Here, the Complaint alleges that SSC, as a third-party supplier, supplies LEDs to its customer Samsung and that "these flash LEDs provide infringing functionality or structure in that product." *See* Compl. ¶¶ 9, 29, 34. The Complaint further alleges generally that "Defendants have induced and are knowingly inducing their distributors, testers, trainers, customers, and/or end-users to directly infringe the '405 Patent, with the specific intent to induce acts constituting infringement . . . ." Compl. ¶ 63; *see also id.* ¶¶ 64, 69–70, 101–03, 107–09. This raises a reasonable inference that SSC, in addition to Samsung Defendants, provided specific instructions, support, and technical assistance to make or use the Accused Products in an infringing way. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (finding allegations that defendant "provid[ed] instructions, support, and technical assistance for the use of the [accused product]" to be sufficient on a motion to dismiss); *see also Uniloc*, 2017 WL 3721064, at *4 (same). LED Wafer's allegations are substantiated by SSC's public documents and discussion of representations SSC made in its motion to intervene and indemnify Samsung in the California litigation:[9]

- "SSC's products will be a focus in the litigation." Dkt. 23 at 6.
- "SSC sells accused products to other customers that may wind up in the stream of commerce in the United States." Dkt. 23 at 7.
- "Samsung has taken the position that SSC must indemnify it . . . ." *Id.*
- "Samsung has asserted that SSC is the manufacturer of at least some of the accused products, and therefore, SSC is the only entity in possession of information necessary to fully defend those products. Samsung lacks detailed knowledge regarding the design detail and operation . . . ." Dkt. 27 at 9.

### c.   SSC knew that Samsung infringed the Asserted Patents.

LED Wafer pleads in detail how Samsung, SSC's customer, infringes the Asserted Patents. The Complaint alleges how Samsung's S25 flash LED meets the limitations of claim 1 of each

---

[9] These docket citations are to the California litigation.

asserted patent. *See, e.g.*, Compl. ¶¶ 81-89. Thus, the Complaint, substantiated by SSC's own representations in its motion to intervene, pleads that SSC knew about this infringement and agreed to indemnify Samsung. Compl. ¶ 9; California litigation, Dkt. 23 (stating that "SSC's products will be a focus in the litigation," "SSC sells accused products to other customers that may wind up in the stream of commerce in the United States.").

Thus, LED Wafer has sufficiently alleged that SSC induced infringement by at least its customer Samsung. SSC's motion to dismiss the claim for induced infringement should be denied.

### 3. LED Wafer Has Pled Willful Infringement.

The Complaint pleads enough facts to draw the inference in LED Wafer's favor that SSC had knowledge of the Asserted Patents and SSC's infringement thereof as early as the issue date of the reexamination certificates of the Asserted Patents. Every claim alleged in this case was created by addition or amendment in part of a reexamination strategy that SSC participated in after being accused of infringement, so when those claims were created SSC instantly knew about those claims and their applicability to SSC's products. Compl. ¶¶ 32, 52-61, 90-99. SSC points to no case dismissing willfulness under anything close to these facts under the proper "totality of circumstances" standard.

"To satisfy [the] knowledge requirement at the pleading phase, a patentee . . . 'must [only] make out the barest factual assertion of knowledge' of the patent." *Finjan, Inc. v. Sophos, Inc.*, 14-cv-01197-WHO, 2015 WL 7075573, at *3 (N.D. Cal. Nov. 13, 2015). "Willful infringement is a question of fact." *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed. Cir. 2018). "When considering a Rule 12 motion to dismiss, a court must accept 'all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff.'" *Estech Sys. IP, LLC v. Mitel Networks, Inc.*, No. 2:21-CV-0473-JRG-RSP, 2022 WL 16641746, at *1 (E.D. Tex. Sept. 23, 2022), *report and recommendation adopted*, No. 221CV00473, 2022 WL 16637978 (E.D. Tex.

28

Nov. 2, 2022) (quoting *Bowlby v. City of Aberdeen, Miss*., 681 F.3d 215, 219 (5th Cir. 2012)).

SSC first argues, without citing any case law, that pre-suit knowledge cannot be based on the earlier-filed California litigation or its participation in the reexamination proceedings related to that case. Not so. District courts have found that where a complaint at least plausibly alleges conduct that could give rise to enhanced damages for willful infringement, the motion to dismiss should be denied. *See, e.g., Pantech Corp. v. OnePlus Tech. (Shenzhen) Co*., No. 5:24-CV-00038-RWS-JBB, 2025 WL 2793801, at *3 (E.D. Tex. Aug. 27, 2025), *report and recommendation adopted*, No. 5:24-CV-38-RWS-JBB, 2025 WL 2778974 (E.D. Tex. Sept. 26, 2025) (recommending denial of motion to dismiss, stating that "a plaintiff need not plead facts demonstrating egregious conduct to establish a claim for willful infringement at the 12(b)(6) stage."); *Karl Storz Endoscopy-Am. Inc. v. Integrated Med. Sys. Int'l, Inc*., 400 F. Supp. 3d 1248 (N.D. Ala. 2019) (denying motion to dismiss for willful infringement where plaintiff discovered and alleged additional infringing products over a seven-year period of ongoing litigation and patent reexamination proceedings, finding that such factual allegations, if proven, "would evidence deliberateness, duration, and a total lack of remedial behavior."); *St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. CIVA 04-1436-JJF-LPS, 2009 WL 2340650, at *1 (D. Del. July 28, 2009) (plaintiff granted leave to file amended complaint as "issuance of reexamination certificates . . . did not preclude the possibility that [defendant's] use of [plaintiff's] patents could be reasonably considered objectively reckless, pending further discovery").

Moreover, it is sufficient for a plaintiff to plead knowledge of the Asserted Patents. *See, e.g.*, *WBIP, LLC*, 829 F.3d at 1341. "For malicious intent, Fed. R. Civ. P. 9(b) provides malice and intent may be pleaded generally." *Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc*., No. 2:22-CV-00494-JRG-RSP, 2024 WL 1340360, at *4 (E.D. Tex. Mar. 1, 2024), *report and recommendation*

*adopted*, No. 222CV00494JRGRSP, 2024 WL 1338080 (E.D. Tex. Mar. 28, 2024). LED Wafer meets this low bar in the Complaint, where it points to SSC's involvement in a reexamination strategy leading to the asserted claims, and alleges that SSC failed to "design around or other avoid infringing" the Asserted Patents, and that SSC "has continued to release new products containing the technology disclosed in and claimed by the reexamined" patents. *See, e.g.*, Compl. ¶ 55. Even if the Court finds LED Wafer has failed to sufficiently plead willfulness, dismissal of the willful infringement claim should be without prejudice, such that LED Wafer may amend its Complaint after receiving discovery. *See, e.g., Touchstream Techs., Inc. v. Altice USA, Inc*., No. 2:23-CV-00059-JRG, 2024 WL 1117930 (E.D. Tex. Mar. 14, 2024) (dismissing pre-suit willful infringement claim without prejudice); *Touchstream Techs., Inc. v. Charter Commnc'ns, Inc*., 2:23-cv-00059-JRG-RSP (E.D. Tex. Mar. 2023), Dkt. 30 (SAC filed after court's dismissal of willful infringement claim).[10]

Thus, SSC's motion to dismiss LED Wafer's willful infringement claims should be denied or, alternatively, dismissed without prejudice.

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny SSC's Motion in its entirety.

---

[10] As SSC repeatedly points out, LED Wafer provided proposed amended contentions (Mot., Ex. 5) and a proposed SAC in the California litigation (*see* Dkt. 245, Ex. 1)—both of which provide additional bases for notifying SSC of its infringement that could be explored through discovery.

Date: January 6, 2026                    Respectfully submitted,


                                         /s/ *Ryan D. Dykal*_____
                                         Lead Counsel



                                         Ryan D. Dykal (*pro hac vice*)
                                         Anita Liu (TX State Bar No. 24134054)
                                         **BOIES SCHILLER FLEXNER LLP**
                                         1401 New York Ave, NW
                                         Washington, DC, DC 20005
                                         (t) 202-274-1109
                                         rdykal@bsfllp.com
                                         aliu@bsfllp.com


                                         *Counsel for Plaintiff LED Wafer Solutions, LLC*


                           **CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that counsel of record who are deemed to have consented to

electronic service are being served with a copy of this document via the Court's CM/ECF system per

Local Rule CV-5(a)(3) on this the 6th day of January, 2026.



                                         /s/ *Ryan D. Dykal*_____
                                         Ryan Dykal